## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **WILLIAMS & CONNOLLY LLP,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:13-cv-00396 (RBW)** |
| ) | |
| **OFFICE OF THE COMPTROLLER OF** ) | |
| **THE CURRENCY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Office of the

Comptroller of the Currency, hereby moves for summary judgment in its favor in the above

captioned case brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*  A

memorandum of points and authorities in support of this motion, a statement of material facts as

to which there is no genuine dispute, five declarations (including exhibits and appendices), and a

proposed order accompany this motion.

Respectfully submitted,

RONALD C. MACHEN JR.
D.C. Bar #447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN
D.C. Bar #924092
Chief, Civil Division

_____/s/_____
CLAIRE WHITAKER
D.C. Bar #354530
Assistant U.S. Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7137
Claire.Whitaker@usdoj.gov

Attorneys for Defendant

*Of Counsel*

Horace G. Sneed
Litigation Director
Gregory F. Taylor
Assistant Director
Office of the Comptroller of the Currency
Counsel for the Comptroller of the Currency

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAMS & CONNOLLY LLP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:13-cv-00396 (RBW)** |
| | ) |
| **OFFICE OF THE COMPTROLLER OF THE CURRENCY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
THE OFFICE OF THE COMPTROLLER OF THE CURRENCY**

**PRELIMINARY STATEMENT**

This action arises out of the partial denial of a Freedom of Information Act ("FOIA") request that the Plaintiff, Williams & Connolly LLP ("Williams & Connolly"), submitted to the Office of the Comptroller of the Currency ("OCC"). Williams & Connolly seeks the disclosure of documents related to enforcement actions brought by the OCC against several financial institutions in its role as the primary federal regulator and supervisor of national banks and federal savings associations. Specifically, Plaintiff seeks disclosure of documents related to the OCC's definition of or standards for "independence" as applied to independent consultants. *See* ECF No. 1 ("Compl.") at pp. 2-3. Plaintiff claims that the OCC has improperly withheld documents related to the OCC's standards for independence for independent consultants that were utilized in connection with a series of OCC enforcement actions brought against twelve mortgage servicers to review their past foreclosure activities, a process known as the Independent Foreclosure Review. *Id.* Plaintiff contends, in addition, that FOIA requires the

OCC to disclose documents related to OCC determinations whether a particular independent consultant was sufficiently independent to carry out the Independent Foreclosure Review.

FOIA, 5 U.S.C. § 552, generally mandates disclosure, upon request, of federal agency records unless the requested records are protected from disclosure by any one of the nine FOIA exemptions.  As evidenced in the declarations of Ashley W. Walker, Senior Attorney with the OCC (hereinafter "Walker Decl." and "Supp. Walker Decl." (Exs. 1 and 2, respectively)), Monica A. Freas, Assistant Director, Enforcement & Compliance with the OCC (hereinafter "Freas Decl." and "Supp. Freas Decl." (Exs. 3 and 4, respectively) ), and Noelle M. Kurtin, Counsel, Enforcement & Compliance with the OCC ("Kurtin Decl." (Ex. 5)), all of the documents withheld in response to Plaintiff's FOIA request fall into the category of documents related to the examination of banks and are therefore exempt from FOIA's disclosure requirements pursuant to FOIA Exemption 8.  5 U.S.C. § 552(b)(8).  This exemption allows the withholding of all records in the broad category of information related to bank examination in response to a FOIA request.  *See, e.g.*, *Public Investors Arbitration Bar Ass'n v. SEC*, 11-cv-2285, 2013 WL 987769 (D.D.C. March 14, 2013).  Additionally, the withheld documents are exempt from disclosure under FOIA Exemptions 4 and 5.  5 U.S.C. § 552(b)(4), (b)(5).  As explained herein, the OCC's application of these exemptions is proper and the OCC identified and released all reasonably segregable information.  Accordingly, because the OCC has fully met its obligations under FOIA, and there is no material issue in dispute on this point, the OCC respectfully moves for summary judgment its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

**I.      Factual Background.**

The OCC is an independent bureau of the United States Treasury Department and an agency of the United States.  The OCC supervises approximately 2,000 national banks and federal savings associations ("banks") as well as 50 federal branches and agencies of foreign banks in the United States, comprising nearly two-thirds of the assets of the U.S. commercial banking system.  The OCC is charged with ensuring that the banks it regulates operate in a safe and sound manner and in compliance with laws requiring fair treatment of their customers and fair access to credit and financial products.  12 U.S.C. § 1(a); *see generally* 12 U.S.C. §§ 1 *et seq.*  The core of the OCC's supervision activity is the bank examination process.  *See* 12 U.S.C. §§ 481, 1820(d).  More than 2,000 examiners perform annual on-site review of banks throughout the country to ensure that they are operated in a safe and sound manner and in accordance with applicable law.  *Id.*  The OCC determines whether grounds exist to, among other matters, charter a national bank, approve various corporate applications, including applications for branches, mergers, and relocations, appoint conservators or receivers, and order administrative enforcement actions, including assessment of civil money penalties for violations of law and "unsafe or unsound" banking practices.  *See, e.g.*, 12 U.S.C. §§ 26, 27, 36, 93, 191, 203, 215a, 215c, and 1818.  Among its enforcement powers, the OCC may order a bank to cease and desist from violations of law or unsafe or unsound banking practices in conducting its business and take affirmative action to correct conditions resulting from any such violation or practices.  *See* 12 U.S.C. § 1818(b).

Congress exempted from FOIA's disclosure requirements records "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. 552(b)(8).

It is OCC policy, moreover, that non-public OCC information—*i.e.* information exempted from disclosure under FOIA, including records created or obtained in connection with the examination process or compiled in connection with the agency's enforcement responsibilities—is confidential and privileged and the agency will not normally disclose it to third parties. *See* 12 C.F.R. § 4.36(b); *see also* 12 C.F.R. § 4.32(b) (defining non-public OCC information) and § 4.36(a) (stating that disclosure of non-public OCC information is at the sole discretion of the Comptroller).[1]

The FOIA request in this case relates to enforcement actions carried out by the OCC and Office of Thrift Supervision ("OTS")[2] in April 2011 against 12 banks with mortgage servicing operations:  Aurora Bank, Bank of America, Citibank, Everbank, HSBC, JPMorgan Chase, MetLife Bank, OneWest, PNC, Sovereign Bank, U.S. Bank, and Wells Fargo. Ex. 3 (Freas Decl.) at ¶ 4; Ex. 5 (Kurtin Decl.) at ¶ 3. The OCC and OTS issued cease and desist orders by consent ("Consent Orders") against these 12[3] mortgage services ("the Banks" or "mortgage servicers") which required, among other actions, that the Banks retain independent consultants to

---

[1] For example, the OCC publicly released the executed engagement letters between the mortgage servicers and the consultants retained for the Independent Foreclosure Review as a discretionary disclosure with no precedential significance. *See* 12 C.F.R. 4.12(c) (OCC release of exempted records has no precedential significance).

[2] Prior to July 21, 2011, OTS was the primary federal regulator of Federal savings associations. On July 21, 2011 ("transfer date"), pursuant to Title III, section 312 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act") (*codified* at 12 U.S.C. § 5412(b)(2)(B)(i)), all functions of OTS relating to Federal savings associations, including enforcement actions, were transferred to the OCC. As a result, on July 21, 2011, the OCC assumed responsibility for the ongoing examination, supervision, and regulation of Federal savings associations. The Dodd-Frank Act continues in effect all OTS orders, resolutions, determinations, agreements, regulations, interpretive rules, other interpretations, guidelines, procedures and other advisory materials in effect the day before the transfer date, and allows the OCC to enforce these issuances with respect to Federal savings associations, unless the OCC modifies, terminates, or sets aside such guidance or until superseded by the OCC, a court, or operation of law. Section 316(b) of the Dodd-Frank Act, 124 Stat. at 1525 (*codified* at 12 U.S.C. § 5414).

[3] On April 13, 2011, the OCC, along with other federal regulators, also brought actions against non-mortgage servicers Lender Processing Services, Inc. and MERSCORP, Inc. *See* Lender Processing Servicers, Inc. Consent Order (Apr. 13, 2011), available at *http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47f.pdf*; Merscorp Inc. Consent Order (Apr. 13, 2011), available at *http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47h.pdf*

undertake reviews of the files for foreclosures processed in 2009 and 2010 to identify financial injury which occurred as a result of deficient foreclosure practices (the "Independent Foreclosure Review" or "IFR").  Ex. 3 (Freas Decl.) at ¶ 5; Ex. 5 (Kurtin Decl.) at ¶ 4.[4]  Engagement of the independent consultants proposed by the Banks was subject to agency nonobjection by the OCC or OTS.  *Id.*  Engagement of independent counsel by the independent consultants was also subject to agency nonobjection by the OCC.  *Id.*

During the period of May through September 2011, OCC and OTS employees engaged in determinations of whether proposed consultants and counsel were sufficiently independent to be retained to carry out the IFR for the mortgage servicers.  Ex. 3 (Freas Decl.) at ¶ 6; Ex. 5 (Kurtin Decl. at ¶ 5.  One of the consultants, Allonhill, LLC ("Allonhill"), was engaged as an independent consultant for Aurora Bank until its termination at the direction of the OCC due to a conflict presented by Allonhill's previous work and the independence requirements of the OCC in connection with the IFR.  *See* Ex. 1 (Walker Decl.) at Ex. D, p. 15.

**II      Procedural History.**

Plaintiff submitted a FOIA request by letter dated June 25, 2013 from Andrew Elliot, Williams & Connolly,[5] to Disclosure Office, Communications Division, OCC ("the FOIA request").  *See* Ex. 1 (Walker Decl.) at Ex. A.  The FOIA request sought:

1.      All documents and/or records relating to the OCC's definition of independence, including:

a.      Any documents and/or records relating to the independence requirements for independent consultants, prescribed by the OCC;

---

[4] *See also generally Interim Status Report:  Foreclosure-Related Consent Orders* (June 2012), Office of the Comptroller of the Currency, available at *http://www.occ.gov/news-issuances/news-releases/2012/2012-95a.pdf* (explaining the scope of the Consent Orders and the IFR).

[5] Williams & Connolly is counsel for the terminated consultant, Allonhill.

      b.      Any documents and/or records relating to the OCC's standards of independence within the meaning of the scope of the consent order foreclosure review pursuant to the April 13, 2011 Consent Orders entered into between 14 mortgage servicers and the OCC of the Office of Thrift Supervision ("Consent Order Foreclosure Review"); and

      c.      Any documents and/or records relating to determining whether any particular independent consultant participating in the Consent Order Foreclosure Review was or was not independent within the meaning of the scope of the Consent Order Foreclosure Review.

  2.    All Documents and/or records relating to the OCC's decision to direct Aurora Bank, FSB to terminate Allonhill, LLC as an independent consultant for purposes of the Consent Order Foreclosure Review.

  3.    All documents and/or records relating to the OCC's decision to direct Promontory Financial Group, LLC to cease using Allonhill, LLC as a subcontractor for the review of in-scope Wells Fargo borrower loan files under Promontory's Engagement as an independent consultant under the Consent Order Foreclosure Review.

*Id.* (footnote omitted).

OCC attorneys Monica A. Freas, Assistant Director, Enforcement & Compliance, and Noelle M. Kurtin, Counsel, Enforcement & Compliance, performed central roles at the OCC and OTS with respect to the vetting of independent consultants for the Banks subject to the IFR in coordination with the teams of bank examiners supervising the Banks' compliance with the Consent Orders. *See* Ex. 3 (Freas Decl.) at ¶ 6; Ex. 5 (Kurtin Decl.) at ¶¶ 3, 5, 7. At the time the FOIA request was received by the OCC, Ms. Freas and Ms. Kurtin had already searched for, identified, and collected documents on the subject of standards for and vetting of independent consultants in response to requests for this information from government offices outside of the OCC ("the government requests"). *See* Ex. 3 (Freas Decl.) at ¶¶ 8-17; Ex. 5 (Kurtin Decl.) at

6

¶¶ 6, 8-10, 12.  Neither the OCC nor OTS had any records reflecting OCC standards for independent consultants, generally, however Ms. Freas and Ms. Kurtin collected approximately 1,860 pages of emails and other documents and 46 MB of data containing, in part, documents responsive to the government requests as well as the FOIA request as it related to independence standards for the IFR. *See* Ex. 3 (Freas Decl.) at ¶¶ 15-17, 19; Ex. 5 (Kurtin Decl.) at ¶ 13. These responsive documents were comprised of materials that were part of the OCC's enforcement action and consent order compliance function and the bank examination process. *See* Ex. 3 (Freas Decl.) at ¶¶ 3, 18; *see also* Ex. 4 (Supp. Freas Decl.) at ¶ 6 (describing these materials as consisting of "bank examination related materials; confidential inter-agency or intra-agency deliberative or policy making process materials or privileged OCC attorney work-product or attorney-client communications; and/or privileged or confidential commercial or financial information obtained by the Banks or proposed consultants or counsel for the purpose of vetting the independence of the consultants and counsel for engagement on the IFR") and Rev. App. A (further describing the withheld materials).

The OCC responded to the FOIA request by letter dated August 23, 2013, from Frank D. Vance, Jr., Manager, Disclosure Services & FOIA Officer, Communications Division, OCC to Mr. Elliot (the "initial decision letter").  *See* Ex. 1 (Walker Decl.) at Ex. B.  The OCC's initial decision letter stated that the FOIA request was denied in full because the records sought were related to the examination of financial institutions and were thus exempted from disclosure under subsection (b)(8) of FOIA.  *Id.*

Plaintiff appealed the OCC's initial decision by letter dated September 21, 2012, from Mr. Elliot to Mr. Vance ("the FOIA appeal").  *See* Ex. 1 (Walker Decl.) at Ex. C.  The FOIA appeal claimed that the OCC's denial of the FOIA request was erroneous because the OCC did

not "specify any 'examination report' to which [the] requested documents supposedly relate or how any of the requested documents actually 'relate' to an examination report." *Id.* Plaintiff further asserted that the OCC had waived any protection of the requested documents by publicly releasing the Consent Orders. *Id.*

The OCC responded to the FOIA appeal by letter dated December 6, 2012, from Richard C. Stearns, Acting Deputy Chief Counsel, OCC to Mr. Elliot (the "final decision letter"). *See* Ex. 1 (Walker Decl.) at Ex. D. The OCC's final decision letter stated that the withholding of most of the responsive documents was proper because information related to examination, operation, or condition reports is exempt pursuant to FOIA Exemption 8, 5 U.S.C. § 552(b)(8). *Id.* The OCC denied that it had waived Exemption 8 protection by publishing 14 Consent Orders because publication of these orders was required under 12 U.S.C. § 1818(u). *Id.* The final decision letter explained further that responsive information also consisted of internal materials reflecting the OCC's deliberative process, privileged attorney work-product, and attorney-client privileged material protected from disclosure as inter-agency or intra-agency memoranda pursuant to FOIA Exemption 5. *Id.* The OCC, however, did grant the FOIA request in part on appeal, by releasing as a discretionary matter, five pages of documents relating to the OCC's definition of independence as it related to the IFR:

- Independence Guiding Principles (draft as of June 14, 2011), 2 pages

- OCC, OTS, and Federal Reserve Board Foreclosure Review Guidance (not dated), 1 page excerpt

- Memorandum from Larry Hattix, Ombudsman, OCC to OCC Independent Consultants (May 24, 2012) Subject:  Third-Party Engagements in Addition to the Consent Order Foreclosure Review Engagement, 2 pages

*Id.*

The OCC also provided Plaintiff with eight pages of documents already publicly available on the OCC's website on the subject of independent consultants and the IFR generally and specific to Allonhill:

- Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, OCC, before the Subcommittee on Housing, Transportation, and Community Development of the Senate Committee on Banking, Housing, and Urban Affairs (December 13, 2011), 5 page excerpt

- Engagement letter between Allonhill and Aurora Bank (September 9, 2011), 2 page excerpt

- OCC Statement: Cessation of Activities by Allonhill as an Independent Consultant Under the Independent Foreclosure Review (May 11, 2012), 1 page

*Id.*[6]

Plaintiff brought this action against the OCC under FOIA (the "FOIA action") when it filed its complaint on March 27, 2013. ECF No. 1 ("Compl."). In the instant action, Plaintiff claims it is entitled to injunctive relief compelling the release and disclosure of the requested agency records. *Id.* at ¶ 12. Plaintiff's FOIA action does not seek documents responsive to the second and third categories of documents described in the FOIA request dealing specifically with

---

[6] On June 19, 2013, the OCC provided Plaintiff with additional material that the OCC had provided Williams & Connolly and its client Allonhill in response to two other requests for information submitted to the OCC: a request for non-public OCC information, made pursuant to the OCC's regulations found at 12 C.F.R. Part 4, Subpart C and another FOIA request, both received subsequent to the FOIA request at issue in this case. *See* Ex. 2 (Supp. Walker Decl.) at Ex. A. As described in the OCC's June 19, 2013 letter, out of an abundance of caution, the OCC directed Plaintiff's attention to the following documents as they may be tangentially related to the subject matter of Plaintiff's FOIA request:

- Comptroller Thomas J. Curry's remarks before the Women in Housing and Finance (February 13, 2013);
- The transcript of Deputy Chief Counsel Daniel P. Stipano's oral testimony before the Senate Banking, Housing and Urban Affairs Subcommittee on Oversight of Independent Consultants in Financial Services (Apr. 11, 2013); and
- The Comptroller's Handbook on Internal and External Audits (Apr. 2003)

*See* Ex. 2 (Supp. Walker Decl.) at Ex. A. The agency provided Plaintiff the first two items in hard copy. *See id.* The OCC provided Plaintiff with the URL for a publically available electronic copy of The Comptroller's Handbook on Internal and External Audits (Apr. 2013): *http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/2003AuditHB.pdf*

Aurora Bank, Allonhill, and Promontory, and Wells Fargo.  *Id.* at p. 3, ¶ 1, n.2.  The FOIA

action, instead only seeks the disclosure of documents described in the first of the three

categories contained in the FOIA request:

1. All documents and/or records relating to the OCC's definition
   of independence, including:

   a. Any documents and/or records relating to the independence
      requirements for independent consultants, prescribed by the
      OCC;

   b. Any documents and/or records relating to the OCC's
      standards of independence within the meaning of the
      scope of the consent order foreclosure review pursuant
      to the April 13, 2011 Consent Orders entered into
      between 14 mortgage servicers and the OCC of the
      Office of Thrift Supervision ("Consent Order
      Foreclosure Review"); and

   c. Any documents and/or records relating to determining
      whether any particular independent consultant
      participating in the Consent Order Foreclosure Review
      was or was not independent within the meaning of the
      scope of the Consent Order Foreclosure Review.

Compl. at pp. 2-3, ¶ 1.  Plaintiff alleges that it "has a right of access to the documents requested,

and [that] the Defendant has no legal basis for its actions in withholding the right of access to

such documents [or in] . . . redacting portions of such documents."  *Id.* at ¶¶ 9-10.  The OCC

answered the complaint on April 30, 2013 denying that it improperly withheld any responsive

records.  *See* ECF No. 7.  The OCC now moves for summary judgment because FOIA

Exemption 8 exempts from disclosure the category of documents that Plaintiff seeks and because

the agency also properly withheld the documents pursuant to Exemptions 4 and 5.

**ARGUMENT**

I.     **Statutory Background and Standard of Review.**

FOIA, 5 U.S.C. § 552, generally mandates disclosure, upon request, of records held by an agency of the federal government, except to the extent such records are protected from disclosure by any one of the nine FOIA exemptions.  The "fundamental principle" that animates FOIA is "public access to Government documents."  *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151 (1989).  "'The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'"  *Id.* at 152 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

At the same time, in enacting FOIA, "the Congress sought to balance the public's interest in governmental transparency against 'legitimate governmental and private interests [that] could be harmed by release of certain types of information.' " *United Techs. Corp. v. U.S. Dep't of Def.,* 601 F.3d 557, 559 (D.C. Cir. 2010) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (quoting *FBI v. Abramson,* 456 U.S. 615, 621 (1982)).  Despite FOIA's general objective of promoting disclosure and transparency, the "exemptions are intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152; *see also* 5 U.S.C. § 552(b) (listing the nine exemptions).  FOIA, thus, "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Center for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *McKinley v. F.D.I.C.*, 744 F. Supp. 2d 128, 134 (D.D.C. 2010).  Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA case, an agency is entitled to summary judgment where it demonstrates that the requested documents are not subject to FOIA's disclosure requirements. *See Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C. Cir. 1980).

The Court may award summary judgment on the basis of information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey,* 656 F. 2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981)).  Before it can obtain summary judgment in a FOIA case, an agency must also show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982), they must describe

"what records were searched, by whom, and through what processes," *Steinberg,* 23 F.3d at 552,

and must show that "it made a good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested." *Oglesby*

*v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) (citing *Weisberg,* 745 F.2d at 1485;

*Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

## II.     The Agency Properly Applied FOIA Exemption 8.

Pursuant to Exemption 8, matters that are "contained in or related to examination,

operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible

for the regulation or supervision of financial institutions" are exempt from disclosure.  5 U.S.C. §

552(b)(8).  The dual purposes of Exemption 8 are to "safeguard public confidence in [banks],

which could be undermined by candid evaluations of financial institutions . . . [and] to ensure

that [banks] continue to cooperate . . . without fear that their confidential information will be

disclosed."  *Nat'l Community Reinvestment Coalition v. Nat'l Credit Union Admin.*, 290 F. Supp.

2d 124, 135-36 (D.D.C. 2003) (citing *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531,

534 (D.C. Cir. 1978) (holding that Exemption 8 excluded "documents relating to the extent of

compliance by certain national banks with the Consumer Credit Protection Act")).  Absent the

protection provided by Exemption 8, disclosure of regulators' frank evaluations could cause

banks to cooperate less than fully with federal authorities.  *See McKinley*, 744 F. Supp. 2d at 143.

### A.  IFR Independence Vetting Documents Are "Related to" Bank Examinations.

Although generally FOIA exemptions are to be "narrowly construed," *U.S. Dep't of*

*Justice v. Julian*, 486 U.S. 1, 8 (1988), it is well established that Exemption 8's scope is

"particularly broad."  *See Consumers Union*, 589 F.2d at 533-35 (holding that documents

submitted to the OCC by national banks which concerned the extent of the banks' compliance

with the Truth-in-Lending Act and any analysis or summary by the OCC of those documents

were properly withheld pursuant to Exemption 8).  In *Consumers Union*, the D.C. Circuit

concluded that "if the Congress has intentionally and unambiguously crafted a particularly broad,

all-inclusive definition, it is not our function, even in the FOIA context, to subvert that effort."

*Id.* (Congress "has left no room for a narrower interpretation of exemption 8").  Subsequent

decisions have reaffirmed that "the meaning of exemption 8 was clear and that its broad, all-

inclusive scope should be applied as written since Congress had intentionally and unambiguously

so contemplated." *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980) (quotations omitted).

    As a threshold matter, Exemption 8 clearly applies to the documents that are collected or

generated during the course of the OCC's oversight of a national bank or federal savings

association.  The OCC is an agency responsible for the regulation or supervision of financial

institutions.  *See* 12 U.S.C. § 1.   One of its essential functions is the examination of the banks

and federal savings associations under its regulation and ongoing supervision and preparation of

reports of the examinations.  *See* 12 U.S.C. §§ 481, 1820(d); *see also* Comptroller's Handbook,

Bank Supervision Process, September 2007 (Updated September 2012 for BSA/AML only)

(herein "Bank Supervision Handbook") at p. 29 ("The OCC fulfills its mission principally

through its program to supervise national banks on an ongoing basis. Examining is more than

just on-site activities that result in an examination report. It includes discovery of a bank's

condition, ensuring correction of significant deficiencies, and monitoring the bank's activities

and progress.").[7]

    Records generated in the context of an administrative enforcement action brought by the

OCC fall within the scope of Exemption 8 because such documents are contained in or related to

---

[7] The Bank Supervision Handbook is available at *http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/banksupervisionprocess.pdf*

examination, operating, or condition reports.  As explained by Ms. Freas, when OCC bank

examiners cite unsafe or unsound practices or violations of law during an examination,

enforcement actions, such as the Consent Orders connected to the IFR, may be brought pursuant

to Section 8 of the Federal Deposit Insurance Act to remedy the deficiencies.  *See* Ex. 3 (Freas

Decl.) at ¶¶ 3-4; *see also Abrams v. OCC*, 5-civ-2433, 2006 WL 1450525, at *1 (N.D. Tex. May

25, 2006) ("The OCC may institute administrative enforcement actions against any national

banking institution or parties affiliated with any national banking institution if, during the course

of an examination, the OCC discovers unsafe or unsound banking practices, violations of law, or

breaches of fiduciary duties."); *see also* Bank Supervision Handbook at 46 ("The OCC uses

formal or informal enforcement actions to carry out its supervisory responsibilities. Examiners

recommend these actions when they identify safety and soundness or compliance problems in a

national bank.").

Turning to the present matter, the relevant OCC examination teams carried out

monitoring of compliance with the Consent Orders as part of the examination process with OCC

attorneys Ms. Freas and Ms. Kurtin playing a coordinating role in the vetting of independent

consultants and counsel related to all of the mortgage servicers.  *See* Ex. 3 (Freas Decl.) at ¶¶ 4,

6; Ex. 5 (Kurtin Decl.) at ¶¶ 3, 5.  The withheld records at issue in the instant action contain the

communications between OCC attorneys and supervisory employees and the Banks, their

proposed independent consultants, and proposed independent counsel as well as internal OCC

and inter-agency discussion of the vetting of independent consultants and independent counsel.

*See* Ex. 4 (Supp. Freas Decl.) at ¶¶ 6-7 & Rev. App. A.  These withheld materials "relate to"

bank examinations and are thus within the scope of Exemption 8.  *See Public Investors*

*Arbitration Bar Ass'n v. SEC*, 11-cv-2285, 2013 WL 987769, at *5 (D.D.C. March 14, 2013)

15

("the 'related to' language [of Exemption 8] casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report'"); *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 37-38 (D.D.C. 2011) (Exemption 8 does not require the defendant to identify a specific report to which the information relates.) (citing *McKinley*, 744 F. Supp. 2d at 143-44;[8] *Atkinson v. FDIC*, 79-cv-1113, 1980 WL 355660, at *1 (D.D.C. Feb. 13, 1980) (finding that the findings of a bank examination and the "follow-up" of a bank examination were "related to" bank examination reports within the plain meaning of Exemption 8).

## B. The Withholding of Independence Vetting Documents Protects the Supervisory Process.

As detailed in the Independence Guiding Principles that the OCC disclosed to Plaintiff, the nature of past and on-going work of the consultants and counsel proposed to work on the IFR was subject to analysis in the independence vetting and disclosures on this topic to the OCC were required.  *See* Ex. 1 (Walker Decl.) at Ex. D, pp. 3-4, 6-7; *see also* Ex. 4 (Supp. Freas Decl.) at Rev. App. A (describing the disclosures of confidential or privileged commercial information). The OCC requires the cooperation of and frank, forthright, and open communication with its regulated entities in order to successfully fulfill its mission to promote the safety and soundness of the national banking system and protect consumers.  *See* Ex. 3 (Freas Decl.) at ¶ 26.  The

---

[8] In *McKinley v. FDIC*, the plaintiff challenged a decision by the Board of Governors of the Federal Reserve System ("the Fed") to withhold several documents pursuant to Exemption 8 when the Fed did not identify specific reports to which the withheld documents related. 744 F. Supp. 2d 128, 143 (D.D.C. 2010). The court found that because the Fed's bank supervisory process was one of "continual interaction and information-sharing by regulated entities with their bank supervisors," the defendant did not need to identify the specific report to which each piece of redacted information related. *Id.* The court found that in light of Exemption 8's "breadth," affidavits that established the information was obtained through an ongoing supervisory process were sufficient to make the withheld information "related to the examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." *Id.* at 144.

withholding of the confidential supervisory records at issue in this case is necessary to preserve

the effectiveness of the OCC's supervisory process and fulfill the purpose of Exemption 8.

In *Public Investors,* the Court concluded that the withholding of records related to the

selection of arbitrators for a financial institution's dispute resolution program, pursuant to

Exemption 8, was proper because maintaining the confidentiality of these records

"'safeguard[ed] the relationship between the banks and their supervising agencies.'" *Public

Investors*, 2013 WL 987769, at *6 (quoting  *Consumers Union,* 589 F.2d at 534)).  The court

recognized that maintaining the confidentiality of information provided to the SEC by its

regulated entities, as well as third parties performing functions for the regulated entities, was

required "'to ensure that [financial] institutions continue to cooperate with regulatory agencies

without fear that their confidential information will be disclosed.'" *Id.* at *6 (quoting *Bloomberg,

L.P. v. SEC,* 357 F. Supp. 2d 156,170 (D.D.C. 2004) (SEC properly withheld documents

reflecting meetings with regulated entities concerning the supervision of securities analysts,

potential conflicts of interest for analysts and their firms, the structure of analyst compensation,

and the transparency of analysts' reports under Exemptions 8 and 5)).

## III.  FOIA Exemptions 4 and 5 Also Protect Certain Withheld Documents from Disclosure.

While all of the withheld documents are categorically exempt from disclosure pursuant to

Exemption 8, some of the documents withheld from Plaintiff are also protected from disclosure

by FOIA Exemptions 4 and 5.  Exemption 4 shields from disclosure the withheld records

comprising "trade secrets and commercial or financial information obtained from a person and

privileged or confidential" and Exemption 5 protects from disclosure the withheld records

comprising, "inter-agency or intra-agency memorandums or letters which would not be available

by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(4), (5).

Although the OCC is entitled to summary judgment in this case based on its proper invocation of Exemption 8, certain withheld materials are also protected under Exemptions 4 and 5.

### A. Information Provided by the Consultants, Counsel, and Banks in the Vetting Process Is Properly Withheld Pursuant to Exemption 4.[9]

The Banks, consultants, and counsel who communicated with the OCC and provided the information that the agency required in the independence vetting process are persons within the meaning of Exemption 4.[10]  See 5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"). Certain documents such as draft engagement letters and details concerning past legal work performed by proposed counsel are privileged attorney work-product or otherwise privileged information about legal representation.  *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A; *see also* Ex. 1 (Walker Decl.) at Ex. D, pp. 3-4, 6-7.  Under federal statute, OCC regulated entities do not waive applicable privilege by making disclosures to the OCC.  *See* 12 U.S.C. 1828(x)(1) ("The submission by any person of any information to the Bureau of Consumer Financial Protection, any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such Bureau, agency, supervisor, or

---

[9] The OCC is required under its regulations to provide notice of this lawsuit to those persons who submitted confidential commercial information withheld in response to Plaintiff's FOIA request.  *See* 12 C.F.R. § 4.16(f).  The OCC is in the process of providing this required notice to the proper parties among the dozens of banks, consultants, and law firms that disclosed confidential commercial information to the OCC in connection with independence vetting.  *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A.  Should the Court be disinclined to award the OCC summary judgment based on its proper application of Exemption 8, interested third parties may seek to assert their claims of privacy and privilege in this action.

[10] The OCC did not assert Exemption 4 in response to the FOIA request or the FOIA appeal.  As explained by Ms. Freas, further review of the withheld records since the inception to the FOIA action has caused the OCC to determine that Exemption 4 is also applicable.  *See* Ex. 4 (Supp. Freas Decl.).  The timing of the agency's explicit assertion of Exemption 4 in no way prejudices Plaintiff; nevertheless, the OCC informed Plaintiff that the agency was willing to postpone summary judgment briefing.  Plaintiff's counsel, however, informed undersigned counsel primarily assigned to this case that Plaintiff would not pursue an extension of time for filing cross-motions for summary judgment.  *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000)(explaining that an agency must as a general rule assert all applicable FOIA exemptions before the district court to preserve its defenses).

authority shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law as to any person or entity other than such Bureau, agency, supervisor, or authority.").

In addition to being privileged, documents and information provided to the OCC in the independence vetting process, such as details about past consultancies and representations and possible conflicts of interest, is confidential within the meaning of Exemption 4. *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A. In analyzing the applicability of Exemption 4, "[c]ommercial or financial information is confidential if it is 'likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Nat'l Community Reinvestment Coalition*, 290 F. Supp. 2d at 133-34 (quoting *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)); *see also Critical Mass Energy Project*, 975 F.2d at 880 (holding that the *National Parks* test applies only in cases "in which a FOIA request is made for financial or commercial information a person was obliged to furnish the Government.").

As part of the IFR independence vetting process, Banks and proposed consultants and counsel were required to provide information about work the consultants and counsel had performed in the past for the Bank seeking to involve them in the IFR as well as work done generally related to foreclosures. *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A.; *see also* Ex. 1 (Walker Decl.) at Ex. D, pp. 3-4, 6-7. The consultants and counsel vetted for engagement on the IFR designated many of their submissions as confidential. *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A. Consultants of the type considered for and engaged on the IFR (as well as the numerous

law firms vetted as independent counsel),[11] work in competitive markets.  It is likely that release

of details regarding past work performed by these entities, information generally held as

confidential if not privileged, would result in substantial competitive injury.  For example, firms

competing with the vetted consultants and counsel for future business could use the intelligence

contained in the withheld documents to improve their bids *vis a vis* the bids of the consultants

and counsel whose commercial information Plaintiff seeks released to the public.  *See Gulf & W.*

*Indus., Inc. v. U.S.*, 615 F.2d 527, 530 (D.C. Cir. 1979) ("[T]o show the likelihood of substantial

competitive harm, it is not necessary to show actual competitive harm. Actual competition and

the likelihood of substantial competitive injury is all that need be shown."); *Nat'l Parks &*

*Conservation Ass'n v. Kleppe*, 547 F.2d 673, 683 (D.C. Cir. 1976) (to determine that disclosure

of information would likely cause substantial competitive injury, "[t]he court need only exercise

its judgment in view of the nature of the material sought and the competitive circumstances in

which the [competitors] do business").

        Should the OCC be forced to disclose such sensitive commercial information, the OCC

would risk receiving less full and frank disclosure of information from regulated entities and

consultants and counsel engaged to perform work required by the regulator which would

negatively impact the OCC's ability to detect and control conflicts of interest.  *See* Ex. 3 (Freas

Decl.) at ¶ 26 (discussing the importance of the OCC receiving "cooperation" and "forthright,

frank, and open communication"); *see, e.g.,* Ex. 1 (Walker Decl.) at Ex. D, p. 15 (recounting the

OCC's termination of Allonhill as an independent consultant on the IFR "after" the consultant

---

[11] *See* Ex. 1(Walker Decl.) at Ex. D, p. 10, Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, OCC, before the Subcommittee on Housing, Transportation, and Community Development of the Committee on Banking, Housing, and Urban Affairs (Dec. 13, 2011) (identifying the independent consultants retained by twelve banks as:  AllonHill, LLC, Clayton Services, Deloitte & Touche, LLP, Ernst & Young, LLP, Navigant Consulting, Inc., PricewaterhouseCoopers, LLC, Promontory Financial Group, LLC, and Treliant Risk Advisors, LLC).  To the OCC's knowledge, the identities of all of the law firms vetted and engaged on the IFR have not been publicly disclosed.

"reported work for third parties that the OCC determined to be inconsistent with the

independence requirements for independent consultants").  Fear of public disclosure of

commercial information not typically released to the public could impinge the thoroughness or

quality of future disclosures that the OCC relies on to ferret out possible conflicts of interest with

respect to consultants when the OCC requires the involvement of consultants in enforcement

actions.[12]  *See generally Washington Post Co. v. U.S. Dept. of Health and Human Services*, 690

F.2d 252, 268-69 (D.C. Cir. 1982) (remanding to the district court for fact finding and

recognizing that third party consultants, required to list their nonfederal employment and

financial interests, might construe their disclosure obligations "narrowly and thus may not

disclose all possible conflicts of interest" absent Exemption 4 protection from disclosure).

### B.  The Agency Properly Applied FOIA Exemption 5 in Withholding Deliberations on the Sufficiency of Independence.

In addition to supervisory communications and confidential and privileged information

from regulated entities and their proposed consultants and counsel protected from disclosure by

Exemptions 8 and 4, the records that the OCC withheld reflect inter-agency and intra-agency

deliberative process and contain privileged attorney work-product and attorney-client

communications exempted from disclosure pursuant to Exemption 5.  *See* 5 U.S.C. § 552(b)(5)

(allowing an agency to withhold "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency").

To qualify for protection under Exemption 5, a document must satisfy two conditions:

"its source must be a Government agency, and it must fall within the ambit of a privilege against

discovery under judicial standards that would govern litigation against the agency that holds it."

---

[12] *See generally* Testimony of Daniel P. Stipano, Deputy Chief Counsel, OCC before the Subcommittee on Financial Institution and Consumer Protection of the Senate Committee on Banking, Housing, & Urban Affairs (Apr. 11, 2013) (discussing the OCC's frequent requirement of banks to engage independent consultants in enforcement actions to assist with remediation both inside and outside the context of the IFR).

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also*

*NLRB v. Sears*, 421 U.S. 132, 148-49 (1975).  Among the privileges incorporated by FOIA

Exemption 5 are the deliberative process privilege, the attorney work-product privilege, and the

attorney-client privilege. *See Klamath*, 532 U.S. at 8; *Sears*, 421 U.S. at 149.

> **1.  The OCC's Internal Discussions and Communications with other Agencies Regarding the Independence of Proposed Consultants and Counsel Are Protected by the Deliberative Process Privilege.**

The deliberative process privilege "covers 'documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated.'" *Klamath*, 532 U.S. at 8 (quoting *Sears*, 421 U.S. at 150).

The privilege "rests on the obvious realization that officials will not communicate candidly

among themselves if each remark is a potential item of discovery and front page news, and its

object is to enhance 'the quality of agency decisions.' " *Id.* at 8-9 (quoting *Sears*, 421 U.S. at

151); *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir.

1977) (purpose is to protect the "quality of administrative decision-making [which] would be

seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and

frank exchange of ideas on legal or policy matters would be impossible"); *Dudman Commc'ns*

*Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987) (privilege "rests most

fundamentally on the belief that were agencies forced to 'operate in a fishbowl,' . . . the frank

exchange of ideas and opinions would cease and the quality of administrative decisions would

consequently suffer").

Included among the documents the OCC withheld from Plaintiff are email exchanges

among OCC attorneys and supervisory staff as well as staff from other agencies deliberating the

sufficiency of independence of proposed consultants and counsel and the status of the agencies'

vetting processes while they were in progress.  *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A.

"Predecisional" and "deliberative" inter or intra-agency communications such as these are protected from disclosure by the deliberative process privilege and Exemption 5. *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (a document is predecisional if it is "generated before the adoption of an agency policy;" a document is deliberative if it "reflects the give-and-take of the consultative process"); *McKinley*, 744 F. Supp. 2d at 141 (having established that the withheld documents were both predecisional" and "deliberative," defendant is *not* also required to establish that the release of the withheld documents or material would cause "harm" to the decision-making process). Under federal statute, moreover, the OCC did not waive "any privilege applicable to any information" by disclosing information to other federal agencies during inter-agency deliberations. *See* 12 U.S.C. § 1821(t).

### 2. Internal OCC Communications with Agency Lawyers Are Properly Withheld as Attorney Client Communications and Attorney Work-Product.

The attorney-client privilege exempts from disclosure confidential communications between a government attorney and a client agency that has sought the attorney's advice. *See Mead Data Cent.*, 566 F.2d at 252-53 (such confidential communications are shielded from disclosure in order to encourage full and frank discussion between client and legal advisor); *see also Coastal States*, 617 F.2d at 863 (it is "clear that an agency can be a 'client' and agency lawyers can function as 'attorneys' within the . . . privilege"). The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. U.S.*, 449

U.S. 383, 389 (1981). Limitations on the attorney-client privilege have therefore necessarily been construed narrowly. *See Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982).

The attorney-work product doctrine protects records prepared by or for an attorney in anticipation of litigation. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3)); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (holding that an attorney must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" and be free to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."). "[T]he Supreme Court has made clear [that] the doctrine should be interpreted broadly and held largely inviolate." *Judicial Watch*, 432 F.3d at 369-70 (citing *Hickman*, 329 U.S. at 510-11 (1947)).

The documents that the OCC withheld from Plaintiff in this action include confidential email communications between OCC supervisory staff and OCC attorneys in which the OCC attorneys are requested to provide legal advice related to independence vetting. *See* Ex. 4 (Supp. Freas Decl.) at Rev. App. A. Pursuant to Exemption 5, the OCC is entitled to withhold these attorney-client communications from Plaintiff. The entire OCC internal legal memo withheld (file no. 16) is exempt as attorney-work product under Exemption 5[13] because "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Judicial Watch*, 432 F.3d at 371 (quotation omitted). While there are no court cases filed against the OCC related to its independence determinations connected to the IFR, related claims have

---

[13] This legal memo, as well as all of the other documents that the OCC has withheld from Plaintiff, are also fully exempt from disclosure under Exemption 8 and are exempt in whole or in part pursuant to Exemption 5 as reflective of deliberative process or attorney client communications or attorney work product and under Exemption 4 for the reasons stated *supra*.

been asserted against other parties; Plaintiff's client Allonhill has brought such a case against Aurora Bank in Colorado state court.[14]   The legal memo falls within the definition of work product because it was reasonably foreseeable that independence related determinations could constitute agency actions that would become the subject of litigation at a later date.  *See Coastal States*, 617 F.2d at 864-65 (while there is no requirement that actual litigation be pending, "at the very least some articulable claim, likely to lead to litigation, must have arisen;" the purpose of the privilege is to protect the adversary trial process itself).[15]

## IV.   The OCC Has Fulfilled Its Procedural Obligations Under FOIA and Plaintiff Is Not Entitled to Any Form of Relief.

### A.   The OCC's Search Was Reasonably Calculated to Uncover All Relevant Documents.

As explained by the agency's declarants, previously in 2012 the OCC received requests for information from government offices outside the OCC for information identical to that sought by Plaintiff in the FOIA request.  *See* Ex. 3 (Freas Decl.) at ¶¶ 8-9, 17; Ex. 5 (Kurtin Decl.) at ¶¶ 6, 12.  After determining that no additional searches could be performed to identify additional documents containing information considered in determining the sufficiency of independence,  *see* Ex. 3 (Freas Decl.) at ¶ 20; Ex. 5 (Kurtin Decl.) at ¶ 14, the OCC relied on

---

[14] *Allonhill, LLC v. Aurora Bank, FSB,* case no. 2012-CV-6381 (CO Dist. Ct., Denver 2012) (in a suit submitted by Williams & Connolly as co-counsel seeking $22.4 million in outstanding invoices related to work Allonhill performed for Aurora Bank on the IFR, the bank has counterclaimed that, because Allonhill lacked independence when it performed the work, the bank is not obligated to pay the outstanding invoices).

[15] Williams & Connolly asks the Court to award its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E).  Compl. at p. 5.  Because the agency is entitled to summary judgment in its favor, Plaintiff will not "substantially prevail" and thereby will not be eligible for attorney fees.  *See* 5 U.S.C. § 552(a)(4)(E).  Even if Plaintiff were to prevail, it could not satisfy the criteria enunciated in *Nationwide Building Maintenance v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) and prove itself entitled to an award of costs and attorney fees because Plaintiff's client seeks the disclosure of these document for its financial interest and the OCC's withholding is more than reasonable.  It appears to the OCC that Williams & Connolly is effectively pursuing these records on behalf of a client undisclosed in the FOIA request and the Complaint.  *See* Ex. 2 (Supp. Walker Decl.) at Ex. A (noting the submission of a substantially identical request for non-public OCC information by Williams & Connolly on behalf of Allonhill and a substantially identical FOIA request submitted to the OCC by Allonhill without the disclosed assistance of counsel).

the documents identified in response to the government requests when it responded to the FOIA request.  Ex. 3 (Freas Decl.) at ¶ 8.[16]

In a FOIA action, an agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990)).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search, which, in the absence of contrary evidence, are sufficient to demonstrate an agency's compliance with FOIA.  *See Perry*, 684 F.2d at 126-27.  Attorneys Freas and Kurtin of the OCC's Enforcement & Compliance Division explain that they were involved in independence determinations for consultants and counsel proposed for engagement on the IFR with respect to all of the Banks under OCC supervision required to engage independent consultants for the IFR.  Ex. 3 (Freas Decl.) at ¶¶ 4, 6; Ex. 5 (Kurtin Decl.) at ¶¶ 3, 5-7.  Unlike the individual examiner-in-charge and supervisory teams responsible for monitoring the compliance of individual banks, Ms. Freas and Ms. Kurtin received communications containing information considered in determining the sufficiency of independence and the issuance of agency nonobjection to the appointment of consultants and counsel for all Banks subject to the IFR, making them well suited to search for and identify the documents on the subject of standards for consultant independence.

---

[16] The agency declarants state that neither the OCC nor the OTS had general independence requirements for independent consultants that would be responsive to point 1a of the FOIA request.  *See* Ex. 3 (Freas Decl.) at ¶ 19; Ex. 5 (Kurtin Decl.) at ¶ 13.  *See also* Ex. 2 (Supp. Walker Decl.) at Ex. A, the transcript of Deputy Chief Counsel Daniel P. Stipano's oral testimony before the Senate Banking, Housing and Urban Affairs Subcommittee on Oversight of Independent Consultants in Financial Services (Apr. 11, 2013), pp. 17-18 ("We [the OCC] don't presently have them [written independence standards for independent consultants]").

Ms. Freas and Ms. Kurtin have described in detail how they systematically reviewed their email files to identify responsive documents. *See* Ex. 3 (Freas Decl.) at ¶¶ 11-12; Ex. 5 (Kurtin Decl.) at ¶¶ 9-10.  Ms. Kurtin explained that her electronic files on the OCC network and her paper files were redundant of her email files. *See id.* at ¶ 11.  Ms. Freas reviewed her electronic network folder and paper files to identify additional responsive documents and reviewed electronic collections of information from individual examination teams. *See* Ex. 3 (Freas Decl.) at ¶¶ 13-14, 16.  Through their collective efforts, Ms. Freas and Ms. Kurtin identified approximately 1,860 physical pages of documents concerning independence standards and independence vetting of consultants and counsel proposed for engagement on the IFR. *Id.* at ¶ 15; Ex. 4 (Supp. Freas Decl.) at Rev. App. A.  In addition, Ms. Freas identified 46 MB of data comprising electronic information from exam teams responding to requests from the government offices. Ex. 3 (Freas Decl.) at ¶ 16; Ex. 4 (Supp. Freas Decl.) at Rev. App. A.  Some, but not all, of the documents contained in these electronic responses are related to independence standards and responsive to Plaintiff's FOIA request and much of the responsive material is duplicative of the physical documents included in the approximate 1,860 pages identified by Ms. Freas and Ms. Kurtin. *Id.*

The methods employed by the OCC to search for documents related to independence standards and evaluations of consultants and counsel for the IFR fulfilled the agency's search obligations under FOIA. *See Oglesby*, 920 F.2d at 68 (an agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request).  Because Ms. Freas and Ms. Kurtin performed a centralized role coordinating the independence vetting for all of the OCC regulated Banks required to obtain independent consultants and because both attorneys systematically and thoroughly searched their files for responsive documents, the

methods the OCC relied on in responding to the FOIA request were reasonably calculated to locate responsive records. *See Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 28 (D.C. Cir. 1998) (an agency need not search every records system so long as it conducts "a reasonable search tailored to the nature of a particular request").

### B.  The OCC Has Released All Reasonably Segregable Non-Exempt Material.

As a discretionary matter, the OCC released several pages of previously non-public documents to Plaintiff in response to the FOIA appeal:

- Independence Guiding Principles (draft as of June 14, 2011), 2 pages

- OCC, OTS, and Federal Reserve Board Foreclosure Review Guidance (not dated), 1 page excerpt

- Memorandum from Larry Hattix, Ombudsman, OCC to OCC Independent Consultants (May 24, 2012) Subject:  Third-Party Engagements in Addition to the Consent Order Foreclosure Review Engagement, 2 pages

Ex. 1 (Walker Decl.) at Ex. D.  The OCC has also provided or otherwise directed Plaintiff to several documents related (or at a minimum, tangentially related) to the subject matter of the FOIA request, some of which are available on the OCC's public website or through other public sources.  *See supra* pp. 9-10 & n.6 (describing documents).

Among the disclosed material is the document indicating what independence principles guided the vetting of consultants and counsel.  The OCC redacted a portion of that document pursuant to Exemption 8 in order to properly withhold analysis dealing with the past work of a specific independent consultant included in the document as an illustrative example.  *See* Ex. 1 (Walker Decl.) at Ex. D, p. 3; Ex. 3 (Freas Decl.) at ¶ 23.  The remaining withheld documents, *see* Ex. 4 (Supp. Freas Decl.) at Rev. App. A, do not contain any non-exempt portions that can be segregated from the materials exempted pursuant to Exemptions 4, 5, and 8 because all contents of these documents are inextricably intertwined with information protected by one or more FOIA

exemption.  *See* Ex. 3 (Freas Decl.) at ¶ 25; *see also Trans-Pac. Policing Agreement v. U.S.*

*Customs Serv.,* 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (An agency claiming that a document is

exempt under FOIA must, after excising the exempted information, release any reasonably

segregable information unless the non-exempt information is inextricably intertwined with the

exempt information); *Performance Coal Co. v. U.S. Dept. of Labor*, 847 F. Supp. 2d 6, 13-14

(D.D.C. 2012) ("In the absence of contrary evidence or specific cites to potentially unsegregated

documents . . . declarations are afforded the presumption of good faith.") (citing *SafeCard Servs.,*

926 F.2d at 1200)). Therefore, all reasonably segregable non-exempt material has been released.

### C.  The Agency's Declarations Are Sufficient to Support the Application of Exemption 8 and Award Summary Judgment.

Because no material facts are in dispute and the OCC has properly applied Exemption 8,

as well as Exemptions 4 and 5, and complied with its procedural obligations under FOIA,

summary judgment should be awarded to the OCC pursuant to Rule 56 of the Federal Rule of

Civil Procedure.  *See Archibald v. U.S. Dept. of Justice*, 11-CV-2028, 2013 WL 2948212, at *2

(D.D.C. June 17, 2013) ("in a FOIA action to compel production of agency records, the agency

'is entitled to summary judgment if no material facts are in dispute and if it demonstrates that

each document that falls within the class requested either has been produced ... or is wholly

exempt from the [FOIA's] inspection requirements.'") (quoting *Students Against Genocide v.*

*Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001)).

In addition to seeking the production of responsive agency records, Plaintiff asks the

Court to order the OCC to file "a '*Vaughn* Index' i.e. an affidavit: 1) identifying each document

withheld from disclosure; 2) stating Defendant's claimed statutory exemption as to each withheld

document (or portion of a document); and 3) explaining why each withheld document is exempt

from disclosure."  Compl. at p. 4.  To the extent Plaintiff asserts that it is entitled to a more

detailed description of the withheld documents than provided in the Freas Declaration and Supplemental Freas Declaration, Plaintiff is mistaken.

As was recently decided by another court in this district, when a FOIA request seeks information related to the examination of a financial institution and the agency withholds production pursuant to Exemption 8, as is the case here, a traditional, detailed *Vaughn* Index is "futile." *Public Investors Arbitration Bar Ass'n v. SEC*, 11-cv-2285, 2013 WL 987769, at *12 (D.D.C. March 14, 2013)(quoting *Church of Scientology of Cal. v. IRS,* 792 F.2d 146, 152 (D.C. Cir. 1986)(when "a claimed FOIA exemption consists of a generic exclusion, dependent upon a category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile")). "Indeed, an agency may 'submit other measures in combination with or in lieu of'" a traditional detailed *Vaughn* Index.  *Id.* (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (emphasis added)).  By explaining the connectedness of the Consent Orders, the IFR, the independence vetting process, and the withheld documents to the bank examination process, s*ee* Ex. 3 (Freas Decl.) at ¶¶ 3, 6; Ex. 5 (Kurtin Decl.) at ¶ 5, Attorneys Freas and Kurtin have provided Plaintiff and the Court with the requisite "reasonable basis" to conclude that the withheld documents are related to bank examination and award the OCC summary judgment on the basis of Exemption 8.  *See Public Investors*, 2013 WL 987769, at *12 (citations omitted); *see also Archibald*, 2013 WL 2948212, at *6 (*Vaughn* index not required when category of documents are exempt) (citing *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 766 (D.C. Cir. 2000)).

The OCC has strived to provide the Court with sufficient detail to justify the application of Exemptions 4 and 5 in this case (as well as Exemption 8), without effectively disclosing exempted bank examination related information.  *See Maydak*, 218 F.3d at 767 (explaining that

the government can and should make use of "mechanisms by which it can accomplish the goal of

protecting sensitive information" fully exempted under FOIA "while at the same time satisfying

its burden of proof with respect to other exemptions").  Should the Court reach the issue of the

application of Exemptions 4 and 5 and require additional justification for application of those

exemptions, the OCC is prepared to provide the required details.  *See id.*

## CONCLUSION

For the reasons stated herein, Defendant requests that its summary judgment motion be

granted.

Respectfully submitted,

RONALD C. MACHEN JR.
D.C. Bar #447889
United States Attorney
For the District of Columbia

DANIEL F. VAN HORN
D.C. Bar #924092
Chief, Civil Division

_____/s/_____
CLAIRE WHITAKER
D.C. Bar #354530
Assistant U.S. Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7137
Claire.Whitaker@usdoj.gov

Attorneys for Defendant

*Of Counsel*

Horace G. Sneed
Litigation Director
Gregory F. Taylor
Assistant Director
Office of the Comptroller of the Currency
Counsel for the Comptroller of the Currency