**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAMS & CONNOLLY LLP | ) |
| | ) |
| 725 Twelfth Street, N.W. | ) |
| Washington, DC  20005 | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OFFICE OF THE COMPTROLLER OF | )  **CASE NO. 1:13-cv-00396** |
| THE CURRENCY | ) |
| | ) |
| 250 E Street, S.W. | ) |
| Washington, DC  20219 | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

THE FOIA REQUEST AT ISSUE ............................................................................... 3

ARGUMENT ................................................................................................................. 4

I.    The OCC's *Vaughn* Index Is Fatally Flawed ................................................. 6

II.    Exemption 8 Does Not Shield the Documents from Production ..................... 7

    A.    The Documents at Issue Do Not Relate to a Bank Examination Report ......... 7

    B.    The Exemption Covers Communications and Materials Relating to the Examination of Banks, Not Third Parties ......................................................... 8

    C.    The OCC Interprets the Exemption in a Manner Unsupported by Its Purpose ............... 9

III.    Exemption 5 Does Not Shield the Documents from Production ....................... 10

    A.    Defendant's *Vaughn* Index Provides No Support for Withholding Documents Under Exemption 5 ......................................................................... 11

    B.    Exemption 5 Does Not Protect Documents Reflecting the Agency's Final Policy or Position .................................................................................. 12

    C.    Exemption 5 Does Not Protect Purely Factual Information ......................... 13

    D.    Exemption 5 Does Not Protect Communications with Non-Agency Persons ............... 14

IV.    The OCC Waived Any Potential Privilege By Its Selective Public Disclosure .................. 14

V.    Exemption 4 Does Not Shield the Documents from Production ....................... 15

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Mail Line, Ltd. v. Gulick,* 411 F.2d 696 (D.C. Cir. 1969) ............................................15

*Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295 (D.D.C. 1999) ..............................................................................................................................11

*Atkinson v. FDIC*, No. Civ. 79-1113, 1980 WL 35560 (D.D.C. Feb. 13, 1980) ...........................9

*Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146 (D.D.C. 2008) ...................................................................................................... passim

*Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152 (D.D.C. 2009) ..............................................................................................................13

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)...................6, 11, 12

*Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531 (D.C. Cir. 1978)...................9

*Cuban v. SEC*, 744 F. Supp. 2d 60 (D.D.C. 2010) .................................................................11, 13

*EPA v. Mink*, 410 U.S. 73, 93 S. Ct. 827 (1973) .........................................................................13

*Forest Guardians v. U.S. Forest Serv.*, No. Civ. 99-614M/KBM, 2001 U.S. Dist. LEXIS 26121 (D.N.M. Jan. 29, 2001) ..................................................................................9

*Gregory v. FDIC*, 631 F.2d 896 (D.C. Cir. 1980) ..........................................................................9

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ......................................................16

*McKinley v. Board of Governors of Federal Reserve System*, 849 F. Supp. 2d 47 (D.D.C. 2012) ........................................................................................................................9

*Multi Ag Media LLC v. Dep't of Agric.*, 515 F.2d 1224 (D.C. Cir. 2008).....................................4

*Nat'l Cmty. Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124 (D.D.C. 2003) ..............................................................................................................10

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S. Ct. 2311 (1978)................................13

*North Dakota ex. rel. Olson v. Andrus*, 581 F.2d 177 & 182 (8th Cir. 1978) ..............................15

*Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) ..............................................6

*Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ..............................5

*Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*,
    839 F. Supp. 2d 304 (D.D.C. 2012) ........................................................................12

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ......................................................13

*Weiner v. FBI*, 943 F.2d 972 (9th Cir. 1991) ................................................................16

## OTHER AUTHORITIES

5 U.S.C. § 552(b)(8) ..........................................................................................................7

5 U.S.C. § 552(a)(4)(B) .....................................................................................................5

5 U.S.C. § 552(b)(5) ........................................................................................................10

Fed. R. Civ. P. 56(a) ..........................................................................................................5

**INTRODUCTION**

Plaintiff seeks a narrow set of documents from Defendant Office of the Comptroller of the Currency ("OCC"):  documents related to the OCC's definition of independence for the outside consultants that the OCC required certain banks to hire to review their improper foreclosure practices.  Plaintiff does not seek documents about the substance of the underlying foreclosure reviews themselves (which, in any event, were performed by the outside consultants, not the OCC); it seeks only the documents that relate directly to the issue of independence of those outside consultants that the OCC made public through repeated disclosures and statements.

Nevertheless, the OCC takes a kitchen-sink approach to asserting FOIA exemptions (the latest one, exemption 4, asserted for the first time just three days ago) in an attempt to shield all of those documents from production.  The OCC has failed to meet its burden to show that the documents are exempt from disclosure for at least the following five reasons: (1) the *Vaughn* index is boilerplate, conclusory, and does not allow the Court or Plaintiff to determine which exemption the OCC contends applies to which document; (2) the OCC has failed to review 46 megabytes of potentially responsive electronic information; (3) the bank examination exemption does not apply because the requested documents do not relate to either a bank or an examination, and the policies behind the bank examination exemption are not implicated by the Plaintiff's requests; (4) exemption 5 does not protect final agency decisions, factual information, or communications with non-agency persons; and (5) the OCC waived any protection it may have had when it publicly referred to "prescribed" requirements for independent consultants.  The OCC's assertion of the bank examination exemption is particularly flawed, as its reading of the exemption would give it limitless power to protect all of its files from disclosure and operate in complete secrecy.  Summary judgment should be granted in favor of the Plaintiff.

1

## BACKGROUND

In late 2010 and early 2011, the Office of Thrift Supervision ("OTS") conducted an investigation of the foreclosure practices at many of the nation's major banks, including Aurora Bank, FSB ("Aurora"). Elliott Decl. ¶ 2, Ex. A. The OTS concluded that Aurora, like other banks, had engaged in a variety of unsafe and unsound practices with regard to foreclosures, including executing false affidavits regarding mortgages and notes, false notarizations, and initiating wrongful legal process. *Id*. The OCC entered public Consent Orders to address those practices and provide for further investigation to lead to the appropriate remediation for borrowers. *Id*.

The Consent Order against Aurora, entered on April 13, 2011, required Aurora to "retain an independent consultant acceptable to the [OTS] to conduct an independent review of certain residential foreclosure actions[.]" *Id*. Consent Orders for the other banks imposed the same requirement. The OTS publicly released the Consent Orders, which required written reports from the independent consultants ("ICs") that would be used to compensate borrowers for the wrongful actions of the banks. The OTS, which had then merged into the OCC, also released redacted versions of the engagement letters between each of the banks and the ICs they retained, and the entire process was the subject of significant public and Congressional scrutiny.

Plaintiff's client, Allonhill, LLC ("Allonhill"), was hired as the IC to review Aurora's foreclosure practices. Allonhill and the other ICs are not financial institutions regulated by the OCC. The mission of the ICs was to design and conduct their own foreclosure reviews independent of the influence or direction of the banks and, while subject to the oversight of the OCC, without OCC personnel or resources.

The foreclosure reviews began in 2011 and continued into 2012, and were the subject of significant public attention during that time. The OCC publicly released reports on the

foreclosure review and its progress, including a report in November 2011 that touted the OCC's prohibition on the banks "overseeing, directing or supervising any of the reviews." Elliott Decl. ¶ 3, Ex. B, at 6; *id.* ¶ 4, Ex. C. The Government Accountability Office also issued two public reports on the foreclosure review. These reports went into great detail about the process of selecting the ICs and the mechanics of the foreclosure review itself. Elliott Decl. ¶ 5, Ex. D; *id.* ¶ 6, Ex. E. The OCC ultimately decided to terminate the foreclosure review process at the end of 2012 by reaching an $8.5 billion settlement with most of the subject banks through amended Consent Orders the OCC publicly released.

In May 2012, prior to the end of the foreclosure review process, Allonhill was terminated at the direction of the OCC for a purported lack of independence. The OCC announced that termination and made its conclusion the subject of public discussion by issuing a press release stating that the OCC directed the termination of Allonhill because "Allonhill reported work for third parties that the OCC determined to be inconsistent with the independence requirements for independent consultants, prescribed by the OCC." Elliott Decl. ¶ 7, Ex. F.

## THE FOIA REQUEST AT ISSUE

As a result of the OCC's public termination of Allonhill, and the "prescribed" requirements for independence on which the OCC relied in its press release, Plaintiff submitted a Freedom of Information Act ("FOIA") request on behalf of its client Allonhill in a letter dated June 25, 2012. The request tracks the language of the OCC press release and seeks "all documents and/or records relating to the OCC's definition of independence" as it relates to independent consultants under the OCC-mandated foreclosure review, including the "requirements for independent consultants, prescribed by the OCC," and the decision to direct the termination of Allonhill as an independent consultant. Elliott Decl. ¶ 8, Ex. G.

The OCC rejected Allonhill's request in full, contending that the requested records were exempt from disclosure under subsection (b)(8) of FOIA.  Elliot Decl. ¶ 9, Ex. H.  Plaintiff appealed the OCC's decision in a letter dated September 21, 2012.  Elliott Decl. ¶ 10, Ex. I.  In response to the appeal, on December 6, 2012, the OCC determined that it would release five pages of documents as a "discretionary matter," and referred Plaintiff to eight additional pages that were already available on the OCC's website, but stated that the vast majority of the responsive documents were properly withheld under subsection (b)(8) of FOIA as well as a new basis that the OCC asserted for the first time, subsection (b)(5) of FOIA.  Elliott Decl. ¶ 11, Ex. J.

Faced with that refusal, Plaintiff filed this FOIA lawsuit on March 27, 2013.  After the lawsuit was filed, the OCC identified in cursory fashion the withheld documents through declarations and a *Vaughn* index dated June 3, 2013.  Elliott Decl. ¶ 12, Ex. K; *id.* ¶ 13, Ex. L.  The OCC maintained its assertion of exemptions 5 and 8 as the bases to refuse production.  Then, just three days ago, the OCC submitted a revised *Vaughn* index which asserts, for the very first time, yet another exemption—exemption 4—as to *all* requested documents.  Elliott Decl. ¶ 14, Ex. M.

## ARGUMENT

FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions.  *Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 155 (D.D.C. 2008) [hereinafter *CREW*].  FOIA exists to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.2d 1224, 1227 (D.C. Cir. 2008).  As a result, FOIA exemptions are to be narrowly construed.  *Id.*  The agency seeking to withhold a

document from disclosure bears the burden of justifying the decision to withhold records under FOIA's statutory exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court will grant summary judgment to the government in a FOIA case only if the agency can "prove that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  *CREW*, 583 F. Supp. 2d at 155.  Thus, an agency must show that "no material facts are in dispute" and "demonstrate[] that each document that falls within the class requested either has been produced or is wholly or partially exempt from disclosure."  *Id.* (alterations and internal quotation marks omitted).

"When an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate."  *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

The OCC refuses to produce the documents Plaintiff seeks on three bases: (1) it claims that the withheld documents are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation and supervision of financial institutions" (exemption 8); (2) it claims that the withheld documents are exempt from disclosure because they would "not be available by law to a party other than an agency in litigation with the agency"—in other words, the materials are protected by the deliberative process, attorney work product, or attorney-client privileges (exemption 5); and (3) it just this week now claims that the withheld documents constitute "trade secrets and

commercial or financial information obtained from a person and privileged or confidential"
(exemption 4). None of the exemptions provides an adequate basis to withhold the responsive
documents, and the failure by the OCC to carry its burden means the documents must be
produced.

## I.     The OCC's *Vaughn* Index Is Fatally Flawed

As a threshold matter, the OCC's *Vaughn* index fails to meet this Court's stringent
standard to establish a claim of exemption. "[A]n agency in possession of material it considers
exempt from FOIA [must] provide the requestor with a description of each document being
withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. U.S.*
*Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). "[C]onclusory assertions of privilege
will not suffice to carry the Government's burden of proof in defending FOIA cases." *Coastal*
*States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

Here, the OCC's *Vaughn* index lists 17 extremely broad categories of documents, failing
entirely to identify specifically the authors and particular subject matters. Many are scattershot
categories of documents, all supposedly subject to the same exemptions, and for the same
reasons. By way of example only, the vast majority of the categories sweep together
communications internal to the agency and those with a variety of third parties. Elliott Decl. ¶
14, Ex. M, at Appendix A File Nos. 3–11, 13–15. The index is rife with barebones references to
the subject matter of the documents—no fewer than ten times invoking the catchall, generic
phrase "concerning independence reviews." Elliott Decl. ¶ 14, Ex. M, at Appendix A File Nos.
3–11, 14. And remarkably, the OCC casually tacked onto the end of the index a "voluminous"
trove titled "Electronic material," as to which it apparently declined even to undertake a
responsiveness review, asserting that the "vast majority" of the documents are not responsive and

6

"many" documents are "likely" duplicative of those in other categories of the index.  Elliott

Decl. ¶ 14, Ex. M, Appendix A at 13, unnumbered file entry titled "Electronic material."

Such a boilerplate index fails to establish any of the exemptions or provide the Court or

Plaintiff with the most rudimentary information to even consider the application of the

exemptions.  That failure alone warrants summary judgment in favor of Plaintiff.

## II.     Exemption 8 Does Not Shield the Documents from Production

The OCC asserts exemption 8, which relates to bank examination, over documents that

relate to the work of a third party, not the OCC, and do not reveal anything about the actual

examination of a bank.  The OCC's improper reading of the exemption would render it limitless.

### A.     The Documents at Issue Do Not Relate to a Bank Examination Report

The OCC's invocation of the bank examination exemption to cover documents relating to

independent consultants is contrary to the exemption's plain language, which only protects

documents "related to examination, operating, or condition reports prepared by, on behalf of, or

for the use of an agency responsible for the regulation or supervision of financial institutions." 5

U.S.C. § 552(b)(8).  Here, the OCC's examination of Aurora's servicing practices was completed

by the time that it issued the Consent Order in April 2011.  The Consent Order plainly indicates

that the OCC "has conducted an examination" and that it has "informed [Aurora] of the findings

resulting from the examination."  Elliott Decl. ¶ 2, Ex. A, at 1.  Instead of beginning an

examination, the Consent Order concluded one, and it created a new, separate process.  This new

process was to be driven by independent consultants, who were not regulated entities of the OCC

and were not to be subject to the control of the banks.  Under the unambiguous language of the

statute, the exemption does not apply.

**B.     The Exemption Covers Communications and Materials Relating to the Examination of Banks, Not Third Parties**

Even if the exemption might apply to the specifics of the loan reviews that an independent consultant performed, those are not the documents at issue here.  The documents Plaintiff seeks are not related to an examination report; in fact, they do not even relate to a financial institution, let alone the safety or soundness of a financial institution.  For example, the log entry for File Number 1 of the Revised *Vaughn* index indicates that the OCC is withholding materials "summarizing the status of <u>evaluations of proposed independent consultants</u> for the IFR [independent foreclosure review]" and "e-mails from OCC attorney to approved <u>independent consultants</u>."  Elliott Decl. ¶ 14, Ex. M, Appendix A at 1, File No. 1 (emphases added).  Similarly, the log entry for File Number 2 of the *Vaughn* index relates to "draft language required in proposed engagement letters for <u>independent consultants</u>, and the status of independence determinations with respect to <u>independent consultants</u> and counsel proposed for the IFR."  Elliott Decl. ¶ 14, Ex. M, Appendix A at 1, File No. 2 (emphases added).  Each additional entry on the index reflects that at least some of the materials relate directly to independent consultants, not banks, which is not surprising given that the Plaintiff did not request materials relating to bank examination.  Elliott Decl. ¶ 14, Ex. M, Appendix A at 2–13, File Nos. 3–17.  Though some of the entries make the general assertion that the discussions "relate to all banks subject to the IFR," this statement could only mean that the discussions relate to the consultants' participation and independence in the IFR generally, not with respect to a particular bank—in other words, the confidential information of a particular bank is not implicated.

The OCC does not advance a principled reason to extend the exemption to the requested documents.  If the OCC's communications with any entity that may have somehow been set in

motion by an examination that concluded over a year ago are protected, even if the

communications do not relate to the soundness or financial information of a bank, then it is

difficult to see any principle that would limit the reach of exemption 8.  This fear is not

hypothetical.  In this case, the OCC claims that the exemption covers even materials relating to

counsel hired by the independent consultants.  Elliott Decl. ¶ 14, Ex. M, Appendix A, File Nos.

2–14.  The OCC's reading of the statute would effectively give it carte blanche to operate in

complete and constant secrecy.  That was not the purpose of the exemption, and the Court should

reject the OCC's effort to make the exemption limitless.  *See Forest Guardians v. U.S. Forest

Serv.*, No. Civ. 99-614M/KBM, 2001 U.S. Dist. LEXIS 26121, at *85 (D.N.M. Jan. 29, 2001)

(rejecting application of exemption 8 when it would shield everything that "might be reviewed in

the process of a bank examination").[1]

### C.    The OCC Interprets the Exemption in a Manner Unsupported by Its Purpose

It is settled that the FOIA statute cannot be read to exempt documents when a "literal

reading leads to an unreasonable result."  *See Consumers Union of United States, Inc. v.

Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978).  The OCC's interpretation is unreasonable in this

---

[1] The cases that the OCC cites in its letters to Plaintiff also do not provide a basis for the OCC's reading that documents unrelated to an examination or a bank are protected by the exemption.  In *Consumers Union of United States, Inc. v. Heimann*, the D.C. Circuit held that the exemption covered documents "relating to the extent of compliance *by certain national banks* with the Consumer Credit Protection Act."  589 F.2d 531, 532 (D.C. Cir. 1978) (emphasis added). Similarly, in *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980), the court held that the exemption covered "financial reports concerning . . . two banks, prepared for use by the agency." In *Atkinson v. FDIC*, No. Civ. 79-1113, 1980 WL 35560, at *1 (D.D.C. Feb. 13, 1980), the court held that the documents related to the examination process because they were directly related to non-public reports "written by FDIC examiners for the agency."  And in *McKinley v. Board of Governors of Federal Reserve System*, 849 F. Supp. 2d 47, 66 (D.D.C. 2012), the court held that the bank examination privilege covered sensitive information withheld by the federal reserve from "supervised LFIs [large financial institutions], financial utilities or clearing banks" and that "*[i]n camera* review confirm[ed] that the disputed records contain[ed] properly exempted information *from supervised financial entities*." (emphasis added).

case because it is unrelated to the two purposes of the exemption:  (1) to safeguard public confidence in financial institutions in order to prevent "unwarranted runs on banks," *Nat'l Cmty. Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 135 (D.D.C. 2003) (internal quotation marks omitted); and (2) to ensure that financial institutions will continue to operate without fear that their confidential information will be disclosed, *id*. at 135–36.

Neither purpose is implicated here.  Plaintiff does not seek any materials that would shake the confidence in financial institutions—the public disclosure of the Consent Order already revealed the OCC's conclusions regarding wrongdoing by the banks; nor does it seek the confidential information of any financial institution—instead, it seeks materials relating to third party independent consultants.  This is not the type of material protected by the bank examination exemption, as OCC Deputy Chief Counsel Daniel P. Stipano acknowledged when he stated that the compensation received by the independent consultants is not "confidential supervisory information" unless "it would reveal examination techniques, examination strategies, or the iterative process *between examiners and the bank*."  Elliott Decl. ¶ 16, Ex. O, at 9 (emphasis added).

### III.  Exemption 5 Does Not Shield the Documents from Production

As to nearly all the documents Plaintiff seeks, the OCC asserts the FOIA exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5) ("exemption 5"). Exemption 5 incorporates the "deliberative process" privilege, the attorney-client privilege, and the attorney work product doctrine.  *CREW*, 583 F. Supp. 2d at 156.

The OCC's reliance on exemption 5 is unsupported and, in many instances, facially invalid based on the OCC's own declarations and *Vaughn* index.

A.     **Defendant's** *Vaughn* **Index Provides No Support for Withholding Documents Under Exemption 5**

As noted in section I, *supra*, the OCC has not carried its burden to establish any of the exemptions due to its failure to provide more than conclusory descriptions of the withheld documents and the nature of the asserted privilege in its declarations and *Vaughn* index.  That failing is especially significant with respect to the assertion of exemption 5, however, because the specific details are vital to evaluation of the privilege claims.

In the context of the deliberative process privilege, the need to describe each withheld document is "particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'"  *Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)).  With respect to the attorney-client privilege, the agency must demonstrate that each document withheld "(1) involves confidential communications between an attorney and his [or her] client and (2) relates to a legal matter for which the client has sought professional advice."  *CREW*, 583 F. Supp. 2d at 158 (brackets in original) (internal quotation marks omitted).  The agency may not "withhold a document merely because it is a communication between the agency and its lawyers," *id.* (internal quotation marks omitted), and "must show that the information provided to its lawyers was intended to be confidential and was not disclosed to a third party," *id.*  The attorney work product doctrine protects only materials "'prepared in anticipation of litigation or for trial.'"  *Id.* (quoting *Coastal States*, 617 F.2d at 864).

Because the OCC's boilerplate *Vaughn* index fails to identify specifically the authors and particular subject matters, it cannot establish the deliberative process privilege.  *See, e.g.*, *Cuban v. SEC*, 744 F. Supp. 2d 60, 77 (D.D.C. 2010) ("The defendant bears the burden of

11

demonstrating, with respect to each its records, that it was candid or personal in nature, that individuals can be linked to the record, and that the information discussed in the record does more than just describe existing policy.  The Court cannot discern in any regard whether records . . . contain such candid and personal communications.").  For the same reasons, the index fails to provide a basis for invoking the attorney-client privilege.  And it does not even purport to identify any anticipated litigation or trial, which is a prerequisite for invoking the attorney work product doctrine.

> **B.**     **Exemption 5 Does Not Protect Documents Reflecting the Agency's Final Policy or Position**

Although the inexact descriptions in the OCC's *Vaughn* index do not permit a full understanding—and production should be compelled on that ground alone—it appears that the OCC may be withholding documents setting forth its policy or position on the standards for independence, including any documents used as the justification for terminating Allonhill. Exemption 5 does not protect those documents.

To justify withholding documents under the deliberative process privilege, the OCC has the burden to prove that the withheld documents are both "predecisional" and "deliberative." *CREW*, 583 F. Supp. 2d at 157.  The OCC "'will not be permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as formal, binding, or final.'"  *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 322–23 (D.D.C. 2012) (quoting *Coastal States*, 617 F.2d at 867).  Thus, "a document cannot be characterized as predecisional 'if it is adopted, formally or informally, as the agency

position on an issue or is used by the agency in its dealings with the public.'" *CREW*, 583 F.

Supp. 2d. at 157 (citation omitted).[2]

It is such a body of secret law that the OCC attempts to shield here.  After announcing the

creation of the foreclosure review, revealing the contracts between the consultants and the banks,

and ultimately directing the termination of Allonhill and publicly offering that the termination

was based on a purported violation of independence, the OCC now apparently attempts to

withhold documents describing or explaining the policy or position of the OCC on the standard

of independence.  Those documents are not predecisional and must be produced.

### C.      Exemption 5 Does Not Protect Purely Factual Information

Purely factual information enjoys no protection under exemption 5.  *EPA v. Mink*, 410

U.S. 73, 88, 93 S. Ct. 827, 836 (1973) (superseded by statute on other grounds, as recognized in

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 226, 98 S. Ct. 2311, 2319 (1978)); *Citizens*

*for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 159 (D.D.C.

2009).  Apart from a conclusory statement from one of its declarants, however, the OCC makes

no effort to meet its obligation to explain why it has not produced purely factual information.

Accordingly, the *Vaughn* index fails to establish the proper invocation of exemption 5.  *See*

*Cuban*, 744 F. Supp. 2d at 77–78 ("Without a more detailed description upon which the Court

can rely, it can only conclude that any candid communications (if, in fact, any are within these

records) can be selectively redacted in a manner that protects the confidentiality of the

recommendations and individuals involved, but still allows any factual information to be

produced.").

---

[2] Nor are such documents shielded by a claim of agency attorney-client privilege.  *See Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997).

**D.      Exemption 5 Does Not Protect Communications with Non-Agency Persons**

Finally, many of the documents as to which the OCC asserts exemption 5 plainly are not "inter-agency" or "intra-agency" communications, and thus are ineligible for the exemption. Several categories of documents on the *Vaughn* index, for example, claim exemption 5 protection for communications with third parties, including banks and independent consultants.[3] Such documents must be produced.

**IV.     The OCC Waived Any Potential Privilege By Its Selective Public Disclosure**

Even if any of the documents might have been subject to the bank examination or deliberative process privileges, the OCC waived that protection by its selective public disclosures, particularly with respect to the standards that were applied in terminating Allonhill as an independent consultant.  As noted above, in its publicly-available news release, the OCC indicated that it terminated Allonhill because "Allonhill reported work for third parties that the OCC determined to be inconsistent with the independence requirements for independent consultants, prescribed by the OCC."  Elliott Decl. ¶ 7, Ex. F.  This statement was a public indication of the OCC's "prescribed" requirements, making those requirements an appropriate subject of FOIA.  The OCC now avers that it "does not have any general independence requirements for independent consultants generally documented in any form[.]"  Elliott Decl. ¶ 12, Ex. K, at ¶ 19.  This is consistent with OCC Deputy Chief Counsel Daniel P. Stipano's testimony before the Senate Banking, Housing and Urban Affairs Subcommittee, that the OCC does "not presently have" "written standards" relating to disqualifying independent consultants and that the OCC is "committed to doing a better job" in this area.  Elliott Decl. ¶ 16, Ex. O, at 17–18.  Nevertheless, the OCC continues to withhold 1,856 documents and 46 megabytes of

---

[3] *See* Elliott Decl. ¶ 14, Ex. M, Appendix A, File Nos. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14 & 15.

documents responsive to Plaintiff's FOIA requests.  Any documents that consist of the OCC's "prescribed" requirements must be produced.

In *American Mail Line, Ltd. v. Gulick*, the court decided whether an "agency may take affirmative action against a private party by means of a decision in which it states that the only basis for such action is a certain specified memorandum and then refuse to disclose the memorandum."  411 F.2d 696, 700 (D.C. Cir. 1969).  The court held that when an agency "stated publicly . . . that its action was based upon [a] memorandum, giving no other reasons or basis for its action," that its memorandum "became a public record," and that consequently it must be produced for public inspection.  *Id.* at 703.  The same considerations apply here.  The OCC publicly directed the dismissal of Allonhill, stating that there are prescribed requirements that governed its action, but now refuses to produce those requirements.  The OCC cannot now withhold requirements that it publicly states it acted upon.[4]  *See also North Dakota ex. rel. Olson v. Andrus*, 581 F.2d 177, 181 n.8 & 182 (8th Cir. 1978) (citing *American Mail Line* and stating that "courts have generally exhibited an intolerant attitude toward administrative secrecy that appeared capricious" and that "selective disclosure . . . is offensive to the purposes underlying the FOIA and intolerable as a matter of policy").

## V.     Exemption 4 Does Not Shield the Documents from Production

Three days ago, on June 25, 2013, the OCC provided Plaintiff with a revised *Vaughn* index, asserting exemption 4 for the very first time—and as to *all* requested documents.  The Court should not consider such a late assertion of an exemption, particularly when the OCC

---

[4] Based on the *Vaughn* index provided by the OCC, the OCC's justification may have been drafted the day before it terminated Allonhill, in a May 10, 2012 memo.  Elliott Decl. ¶ 14, Ex. M, Appendix A, at File No. 16.  If the prescribed requirements that the OCC was referring to was the memo, then the memo constitutes agency policy and is not protected by privilege.

acknowledges it could have advanced this issue earlier.  Elliott Decl. ¶ 14, Ex. M, at ¶ 4

(explaining that this lawsuit caused the OCC to "assess the documents in greater detail").

Even if the Court considers the assertion of the exemption, the OCC has not carried its

burden of establishing its applicability.  The Supplemental Declaration provided by Ms. Freas is

conclusory and states in the alternative that the documents on the *Vaughn* index

> consist[] of bank examination related materials; confidential inter-agency or intra-agency deliberative or policy making process materials or privileged OCC attorney work-product or attorney-client communications; and/or privileged or confidential commercial or financial information obtained by the Banks or proposed consultants or counsel for the purpose of vetting the independence of the consultants and counsel for engagement on the IFR.

Elliott Decl. ¶ 14, Ex. M, at ¶ 6.  The declaration, and corresponding *Vaughn* index, is so littered

with ambiguity that it is impossible to tell, which, if any of the documents might contain

confidential information within the meaning of exemption 4.  Indeed, the OCC asserts exemption

4 as a basis for withholding every single document at issue, without establishing that every

document contains confidential information and without even considering the possibility of

redaction.

This generalized approach does not meet the OCC's burden.  *See King v. U.S. Dep't of

Justice*, 830 F.2d 210, 218–19 (D.C. Cir. 1987) (an agency must provide "a relatively detailed

justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of a withheld document to which they apply"

(internal quotation marks omitted)); *Weiner v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) ("The

most obvious obstacle to effective advocacy is the . . . decision to state alternatively several

possible reasons for withholding documents, without identifying the specific reason or reasons

for withholding each particular document." (citing *King*, 830 F.2d at 218–19)).

At a minimum, Plaintiff submits that exemption 4 does not justify the refusal to produce documents and instead the Court or the parties could consider the issue of confidentiality and redaction, if appropriate, for any documents the Court orders the OCC to produce.

## CONCLUSION

For all the foregoing reasons, the OCC has not carried its burden to establish that any FOIA exemption shields the production of the requested documents.  The Court should grant summary judgment in favor of the Plaintiff and order production of the documents identified on the *Vaughn* index.

Respectfully Submitted,

WILLIAMS & CONNOLLY LLP

Dated:  June 28, 2013          By:      /s/ Andrew M. Elliott

David D. Aufhauser (#949396)
Stephen D. Andrews (#470994)
Ryan P. McCarthy (#991468)
Andrew M. Elliott (#992592)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(P) 202-434-5229
(F) 202-434-5029
daufhauser@wc.com
sandrews@wc.com
rmccarthy@wc.com
aelliott@wc.com

*Attorneys for Plaintiff*