**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WILLIAMS & CONNOLLY LLP | ) | |
| 725 Twelfth Street, N.W. | ) | |
| Washington, DC  20005 | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| OFFICE OF THE COMPTROLLER OF THE CURRENCY | ) | CASE NO. 1:13-cv-00396 |
| 250 E Street, S.W. | ) | |
| Washington, DC  20219 | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.   The Bank Examination Privilege Does not Shield the Documents from Production ............. 1

II.  The OCC Has Not Met its Burden Relating to Exemption 4 ................................................... 4

III. Exemption 5 Does Not Protect the Requested Documents ..................................................... 8

IV.  The Court Should Compel the Agency to Produce a Proper *Vaughn* Index ......................... 10

   A. The Agency Committed to Produce a *Vaughn* Index, Then Admittedly Failed to Do So ... 10

   B. A Proper *Vaughn* Index Is Vital to Evaluation of the Privileges at Issue and Should Be Compelled ................................................................................................................................. 11

CONCLUSION ............................................................................................................................ 12

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156 (D.D.C. 2004)……………........................................3

*Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146 (D.D.C. 2008) ..................................................................................................................8, 9

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)...............................9

*Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531 (D.C. Cir. 1978).....................3

*Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992) ..........................................7

*In re Grand Jury*, 475 F.3d 1299 (D.C. Cir. 2007)........................................................................7

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 124 S. Ct. 1570 (2004) .......................2

*Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) ..............................................12

*Public Investors Arbitration Bar Ass'n v. SEC*, 2013 WL 987769 (D.D.C. Mar. 14, 2013)............3

*Stonehill v. I.R.S.*, 534 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................7

### **OTHER AUTHORITIES**

5 U.S.C. § 552 (b) ..........................................................................................................................8

5 U.S.C. § 552(b)(4) ......................................................................................................................4

5 U.S.C. § 552(b)(8) ......................................................................................................................1

**INTRODUCTION**

The OCC's justifications for withholding scores of documents, founded on blanket, generic claims of exemption, fail as a matter of law.  Neither the plain language of Exemption 8 nor the purposes behind the exemption allow the OCC to withhold documents that do not relate to a bank examination, a supervised entity, or a financial institution.  Moreover, Exemption 4 only applies to a narrow category of documents implicating confidential trade secret or commercial information.  The requested independence standards do not implicate confidential information in any way, and the OCC has failed to carry its burden to show that even a smaller subset of the requested documents are covered by Exemption 4—if they are, the OCC should produce them with appropriate redactions.  Finally, the OCC effectively concedes that it has not provided the requisite detail to show that Exemption 5 applies to the requested documents.  Nor could it, given that the OCC has publicly declared that it relied on at least some of the requested documents and referred to them as "prescribed standards"; therefore, the documents are not "predecisional" or "deliberative."  Accordingly, summary judgment in favor of the Plaintiff is appropriate.

**ARGUMENT**

**I.     The Bank Examination Privilege Does Not Shield the Documents from Production**

Exemption 8 requires withheld materials to be "related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8).  But here, the requested documents do not relate to a bank examination but instead to a third-party driven independent foreclosure review.  The foreclosure review process was an exercise publicly trumpeted by the OCC, not a secret regulatory process that needs to be shielded from the public to preserve its

1

confidence in financial institutions.  Accordingly, under the plain language of Exemption 8, the documents at issue were not properly withheld under that exemption.

In an attempt to nevertheless justify its withholding, the OCC stretches the language of Exemption 8, arguing that it categorically exempts from disclosure all documents "generated during the course of the OCC's oversight of a national bank." Def.'s Mem. at 14.  For this proposition, the OCC cites its own handbook, which asserts that the agency "supervise[s] national banks on an ongoing basis." *Id.* at 14.  On that basis, the agency argues—contrary to the plain statutory language—that it need not specify any bank examination report to which the withheld documents supposedly relate. *Id*. at 16.  Accordingly, despite the OCC's lip service to the necessary balance of the public's interest in governmental transparency against legitimate governmental interests in withholding information, *id.* at 11, it now petitions the Court to hold that any document is exempt if generated coincident in time with its supervision of banks— which it says is *always ongoing*.  In other words, unless and until the OCC decides to stop examining banks, no one outside its halls can see a single sheet of its official papers, and the agency may as well furlough its FOIA officer.  To approve such a license for secrecy—for an agency Congress purposefully subjected to FOIA—would ignore the Supreme Court's admonition that FOIA is "a means for citizens to know 'what their government is up to'" and "should not be dismissed as a mere formalism." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72, 124 S. Ct. 1570, 1580 (2004).  Accordingly, the OCC's request that the Court render Exemption 8 limitless as to agency activities should be rejected.

Not only are the documents not exempt under the plain language of the statute, but the OCC's withholding of the requested documents does not fulfill either purpose of the exemption. As a result, even if the OCC is correct that the exemption is limitless and all-inclusive on its face,

it cannot be read to shield the documents at issue here because a literal reading of the statute would lead to an unreasonable result. *See Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978). The OCC acknowledges that the dual purposes of Exemption 8 are to: (1) safeguard public confidence in banks, and (2) encourage full and frank cooperation between the banks and their regulators. Def.'s Mem. at 13. Yet the OCC asserts that the requested documents are exempt from disclosure even though their withholding does not implicate the purposes of Exemption 8 in any way.

The Plaintiff does not seek any materials that would shake the confidence in financial institutions because the information sought is about independent consultants, not banks. The OCC acknowledges as much by omitting any discussion of the first purpose of the exemption in its opening brief. As for the second purpose of the exemption, the most that the OCC can muster in support of its withholding is that it is "necessary to preserve the effectiveness of the OCC's supervisory process" because the "OCC requires the cooperation of and frank, forthright, and open communications with its regulated entities . . . ." Def.'s Mem. at 16. Even if such a boilerplate statement were true of the foreclosure review, it does not support exempting the documents here because the independent consultants are not regulated by the OCC. Production of the requested documents would in no way impair the OCC's claimed need for candor from its regulated financial institutions.[1]

---

[1] This fact distinguishes *Public Investors Arbitration Bar Ass'n v. SEC*, in which the court held that Exemption 8 "applies to records related to a regulatory agency's examination of a financial institution, including *that financial institution's administrative functions or activities.*" 2013 WL 987769, at *12 (D.D.C. Mar. 14, 2013) (emphasis added). *See also id.* at *5 ("Exemption 8 extends to any documents received by a financial regulatory agency in the course of exercising its 'regulatory responsibilities *in relation to the financial institutions whose information has been withheld*'") (citation omitted) (emphasis added). In that case, the documents related to the SEC's supervision of the administrative activities of FINRA, which the parties did not dispute was a financial institution subject to regulation by the SEC. *See id.* at *2, *4. Similarly, in *Bloomberg,*

3

Rather than serve the purposes of Exemption 8, the OCC's withholding actually hampers them. Though the OCC does not address the first purpose of the exemption—to safeguard the public confidence in the banks—that confidence is undermined by the withholding here because the OCC refuses to disclose the purported standards, if any, it used to qualify the consultants that were charged with determining whether the public was harmed by wrongful foreclosure practices. *See, e.g.*, Ex. A to Ex. 2 of Def.'s Mem. in Support of Motion for Summary Judgment, April 11, 2013 Testimony of Daniel P. Stipano at 17–18 (stating that written standards are "an important area and we are committed to doing a better job"). As for the second purpose of the exemption, instead of disclosure hampering candor, publicly disclosing the standards, if any, that were used to qualify independent consultants in the foreclosure review will enable consultants to provide relevant information at the outset of similar engagements in the future. Keeping the standards secret provides a fertile environment for misunderstandings and *post hoc* and arbitrary judgments by the OCC. The OCC should not be permitted to use the exemption to engage in secrecy that distorts the very purposes of the exemption.

## II.     The OCC Has Not Met its Burden to Prove Exemption 4 Applies

The OCC invokes Exemption 4 in an effort to make the documents at issue appear to be too complicated to produce. But Exemption 4 is narrow in scope and only protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Plaintiff requests only three categories of documents: two do not

---

*L.P. v. SEC*, the court held that notes memorializing the SEC's discussions with the regulated entities themselves regarding their administrative functions—the New York Stock Exchange, the National Association of Securities Dealers, and several brokerage firms—were exempt from disclosure. 357 F. Supp. 2d 156, 169–70 (D.D.C. 2004). Here, the FOIA requests do not encompass materials relating to the regulated entity's administrative functions. Instead, the requests seek materials relating to the OCC's standards for independent consultants and the OCC's determinations with respect to the independent consultants—entities that are not financial institutions and that are not regulated by the OCC.

implicate confidential information, and any confidential information can easily be segregated from the documents in the third category.

The first category of documents that the Plaintiff requested was the independence requirements for independent consultants, prescribed by the OCC. Compl. at 2. The OCC avers that it has no such documents. Def.'s Mem. at 26 n.16. Second, the Plaintiff requested the standards for independence as they relate specifically to the independent foreclosure review. Here, the OCC does not assert that it has no such documents, but also cagily does not identify the responsive documents that it does have (in its "description" of withheld documents or otherwise) or indicate that it has produced all such documents. To the extent any standards exist, they should be produced, as they do not implicate confidential information in any way. For example, even if the independent consultants' responses to the OCC are subject to redaction, what were the questions, if any, that the OCC asked those consultants regarding independence? What were the supposed standards, if any, that were transmitted to the independent consultants? At present, the OCC simply asserts that it has disclosed a "document indicating what independence principles guided the vetting of the independent consultants." Def.'s Mem. at 28. But the document produced is clearly marked "draft" and contains an obvious typographical error that makes it entirely unclear. *See* Exhibit D to Exhibit 1 of Def.'s Mem. in Support of Motion for Summary Judgment, document titled "Independence Guiding Principles" and marked "Draft as of June 14, 2011." The OCC has not produced any later versions of this document or any documents showing that these supposed guiding principles were even transmitted to the independent consultants, which would be the case if the standards were actually "prescribed" as the OCC indicated in its press release.

As for documents responsive to request 1c, documents relating to determinations regarding whether a particular independent consultant was or was not independent, the determinations themselves are unlikely to contain any confidential information and should be produced. As for the remaining documents responsive to request 1c, which purportedly show past engagements of the independent consultants, the OCC's explanation of why these documents are confidential under Exemption 4 is a great illustration of the games that the government is playing with respect to these FOIA requests.

The OCC states, although not in a sworn declaration and therefore not sufficient for use in support of the OCC's motion for summary judgment, that "Banks and proposed consultants and counsel were required to provide information about work the consultants and counsel had performed in the past for the Bank seeking to involve them in the IFR as well as work done generally related to foreclosures." Def.'s Mem. at 16, 19. Of course, these requirements, if they exist, are exactly what the Plaintiff has requested in its FOIA requests and have not been produced. Nothing that the OCC has produced to date reflects this requirement. One of the two documents that the OCC cites for the proposition that this requirement existed is clearly marked draft, as discussed above, and the OCC has not produced any documents showing that it was actually transmitted to the consultants or otherwise adopted as an official agency position. The other document is dated May 24, 2012, *after* the OCC directed the termination of Allonhill for allegedly violating its prescribed standards. *See* Ex. 1 to Def.'s Mem. (Walker Decl.) at Ex. D, pp. 6–7. In spite of refusing to turn over any prescribed requirements, the OCC then asks the Court to take its word that the requirements do in fact exist in order to bolster an argument that the *National Parks* legal test should apply to the government's Exemption 4 withholdings—a test that only applies when the party providing the purportedly confidential information was

"obligated" to supply it to the government. Unless and until the government produces the document that purportedly shows that consultants were obligated to disclose this information, the *National Parks* legal test should not apply.

Instead, the test discussed in *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992), is the proper standard, because a party was not "obligated" to provide the purportedly confidential information in question to the government. Under *Critical Mass*, any commercial or financial information provided by the consultants is exempt from disclosure if the information "would customarily not be released to the public by the person from whom it was obtained." *Id*. at 878–79. Here, the OCC has acknowledged that only some of the consultants designated their submissions as confidential. Def.'s Mem. at 19. Furthermore, many of the submissions likely contain basic information regarding the clients of the consultants—information that may already be public.

As for any documents that do legitimately contain information properly covered by Exemption 4, the Plaintiff represents that it will work in good faith with the OCC regarding the production of documents with appropriate redactions. Because the OCC has not provided a *Vaughn* index, however, *see infra* 10–12, the Plaintiff cannot determine which documents truly may contain confidential information. Even if some of the portions of the documents responsive to request 1c contain confidential or privileged[2] information properly exempt under Exemption 4, the OCC must release reasonably segregable portions of the documents. 5 U.S.C. § 552 (b).

---

[2] With respect to the documents that the OCC claims may be protected by privileges held by the consultants, the OCC does not assert that any party has actually asserted privilege over any documents at issue. The consultants, not the OCC, control the assertion of the privileges. Moreover, any documents, such as draft engagement letters and details concerning past work, which the consultants likely shared with third parties such as the banks, would not be entitled to any claim of privilege because the privilege was waived. *See Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 8 (D.D.C. 2008) (citing *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007)).

### III. Exemption 5 Does Not Protect the Requested Documents

Nearly across the board, the agency claims FOIA Exemption 5, which incorporates the deliberative-process privilege, the attorney-client privilege, and the attorney work product doctrine. *See Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 156 (D.D.C. 2008). The agency has failed to meet its summary judgment burden with respect to Exemption 5.

As a threshold matter, the agency's "description" of its documents is facially insufficient to prove the exemption. The agency apparently does not contend otherwise, relying on its blanket assertion of Exemption 8 and asking the Court to either dilute or postpone the required justification for Exemption 5. *See* Def.'s Mem. at 30 (agency has "strived to provide the Court with sufficient detail to justify" application of Exemption 5); *id.* at 31 ("Should the Court reach the issue of the application of Exemptions 4 and 5 and require additional justification for application of those exemptions, the OCC is prepared to provide the required details."). In plain English, the agency is betting that its "Hail Mary" pass—its blanket assertion of the bank examination privilege—will win the day, excusing any evaluation of the other claimed privileges. In the meantime, Plaintiff and the Court are put in the impossible position of undertaking a full evaluation of the other exemptions, but with a half-baked factual basis. The agency's position effectively concedes that the Court must deny summary judgment as to Exemption 5.

The agency's substantive argument on Exemption 5 ignores key distinctions between protected and unprotected documents. Most important, Plaintiff seeks documents reflecting the agency's standards for consultant independence—standards which the agency announced it had "prescribed" and relied upon in a press release on the termination of Allonhill. *See* Ex. D to Ex.

1 of Def.'s Mem. at 15.  As a final policy or position of the agency, relied upon in agency decisionmaking, any such standards cannot possibly be "predecisional" and "deliberative" as Exemption 5 requires.  *See CREW*, 583 F. Supp. 2d at 157; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) (agency "will not be permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as formal, binding, or final").  As a result, the Court should compel the agency to make a choice: (i) produce all such documents, or (ii) represent under oath that no such documents exist.

The agency also fails to meet its burden as to the attorney-client privilege and work product doctrines.  As to the former, the "description" before the Court fails to identify specific parties to communications, so there is no basis to determine whether any applicable privilege has been waived.  In addition, beyond conclusory assertions, the "description" does not show the provision of legal advice by agency counsel.  With respect to work-product protection, the agency recognizes the prerequisite that the withheld documents were prepared in anticipation of litigation.  *Coastal States*, 617 F.2d at 864.  For factual support, however, the agency points solely to the *post hoc* development that litigation ensued months later, not with the OCC, but between third parties Allonhill and Aurora Bank FSB.  The agency articulates no actual or threatened claim that had "arisen" at the time the documents were prepared, as the law requires, *see id.* at 864–65.

For the foregoing reasons, the Court should deny the agency's motion for summary judgment as to claimed Exemption 5.

9

## IV.     The Court Should Compel the Agency to Produce a Proper *Vaughn* Index

The exemptions asserted by the OCC do not apply to the requested documents as a matter of law. But with respect to any particular document, the Court and the Plaintiff remain in the dark about what documents are responsive to the Plaintiff's requests, what has been withheld, and why. That state of affairs is due to the agency's apparent disregard of the parties' agreement. Prior to the briefing, both parties recognized the need for a *Vaughn* index to properly evaluate the claimed privileges, and accordingly agreed that one would be provided. The agency now apparently concedes that it has not even attempted to produce a *Vaughn* index, contrary to the parties' agreement. In any event, the agency's opening brief and scattershot "description" of the withheld documents amply demonstrate why the agency must produce a proper *Vaughn* index here. The Court should so order.

### A.     The Agency Committed to Produce a *Vaughn* Index, Then Admittedly Failed to Do So

When the parties conferred regarding the proposed briefing schedule, agency counsel proposed that the parties file simultaneous cross-motions for summary judgment. Plaintiff's counsel explained that Plaintiff would agree to that proposal, provided that the agency produce a *Vaughn* index to Plaintiff prior to filing of the cross-motions. *See* July 29, 2013 Elliott Decl. ¶ 2, Ex. A [May 14, 2013 4:51pm email from Elliott to Whitaker]. Agency counsel agreed. *See id.* [May 14, 2013 5:52pm email from Whitaker to Elliott]. Indeed, agency counsel understood that Plaintiff had accepted the agency's proposed briefing schedule in reliance on the agency's promise to provide a *Vaughn* index prior to briefing: after Plaintiff's counsel confirmed the parties' agreement, agency counsel wrote: "I agree with you that you need the VI [*Vaughn*

10

Index] before you file your dispositive motion." *See* July 29, 2013 Elliott Decl. ¶ 3, Ex. B [May 15, 2013 11:43am email from Whitaker to Elliott].[3]

As already described in Plaintiff's motion and supporting memorandum, *see* Pl.'s Mem. at 6–7, the document the agency provided to counsel prior to briefing, and on which it now relies in order to justify its withholding, is not a proper *Vaughn* index. For that reason, and contrary to the parties' agreement, Plaintiff is flying blind, well into dispositive briefing. The agency does not now contend otherwise, and remarkably its opening brief omits any mention of its agreed obligation to provide the index prior to briefing. The agency instead simply ignores the parties' agreement and pleads that the Court excuse this routine obligation. *See* Def.'s Mem. at 29–31.

### B. A Proper *Vaughn* Index Is Vital to Evaluation of the Privileges at Issue and Should Be Compelled

In light of the agency's failure to honor the parties' agreement, the Court should compel production of a proper *Vaughn* index. For the reasons already described in Plaintiff's opening brief, *see* Pl.'s Mem. at 6–7, the "description" presently before the Court fails utterly to identify the documents. The agency has declined to specify the documents properly for Plaintiff and the Court, notwithstanding that it admits it gathered the documents over a year ago in connection with congressional requests for the materials. *See* Freas Decl. at ¶¶ 8–9, Ex. 3 to Def.'s Mem. Not surprisingly, the agency does not even attempt to argue that the description constitutes a *Vaughn* index. Instead, the agency asks to be relieved of the obligation, primarily because it has asserted a blanket privilege (FOIA Exemption 8, the bank examination privilege) over "categories" of documents—that is, <u>all</u> categories of documents. *See* Def.'s Mem. at 30. For the

---

[3] Only after Plaintiff's counsel filed the parties' Joint Scheduling Statement in reliance on the agency's commitment to produce a *Vaughn* index prior to briefing, agency counsel sent Plaintiff's counsel an email stating ambiguously that the agency would "produce the requisite description of exempted records" to Plaintiff prior to briefing.

11

reasons stated in Plaintiff's substantive argument, *see supra* pp. 1–4, Exemption 8 does not provide such blanket protection; accordingly, the cases cited by the agency are inapposite.

With respect to the other asserted grounds for withholding (Exemptions 4 and 5), the "description" provided is deficient for the reasons described in Plaintiff's opening brief, to which we respectfully refer the Court. Among other things, the "description" asserts 17 broad categories; fails entirely to identify authors and particular subject matters; sweeps together communications internal to the agency and those with a variety of third parties; relies on barebones, boilerplate descriptions of subject matter; fails to specify which exemptions allegedly apply to which documents; fails to specify which withheld documents relate to which FOIA request categories; and tacks on a "document dump" category that apparently has not even been reviewed for responsiveness. *See* Pl.'s Mem. at 6–7.

In order for Plaintiff and the Court to evaluate and test the claimed privileges, the agency must "provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). As requested in the Complaint, the Court should compel the agency to provide a proper Vaughn index, an affidavit (1) identifying each document responsive to each particular request withheld from disclosure; (2) stating Defendant's claimed statutory exemption as to each withheld document (or portion of a document); and (3) explaining why each withheld document is exempt from disclosure. *See* Compl. at 4–5.

## CONCLUSION

In an astonishing display of hubris, the OCC has failed to provide a *Vaughn* index and failed to make more than a half-hearted attempt to justify its withholdings under Exemptions 4 and 5 in the hopes that the Court will sustain the OCC's attempt to make Exemption 8 limitless—effectively giving the agency a pass on FOIA—because of the OCC's constantly

"ongoing" supervision of banks. The language and the purposes of Exemption 8 do not support the government's bold attempt to operate in continuous secrecy, however, and thus the government's motion for summary judgment should be denied. Summary judgment should be granted in favor of the Plaintiff.

                                         Respectfully Submitted,

                                         WILLIAMS & CONNOLLY LLP

Dated: July 29, 2013         By:     /s/ Andrew M. Elliott

                                         David D. Aufhauser (#949396)
                                         Stephen D. Andrews (#470994)
                                         Ryan P. McCarthy (#991468)
                                         Andrew M. Elliott (#992592)
                                         WILLIAMS & CONNOLLY LLP
                                         725 Twelfth Street, N.W.
                                         Washington, DC 20005
                                         (P) 202-434-5229
                                         (F) 202-434-5029
                                         daufhauser@wc.com
                                         sandrews@wc.com
                                         rmccarthy@wc.com
                                         aelliott@wc.com

                                         *Attorneys for Plaintiff*