## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
WILLIAMS & CONNOLLY LLP,                  )
                                          )
                     Plaintiff,           )
                                          )
          v.                              )         Civil Action No. 13-0396
                                          )
OFFICE OF THE COMPTROLLER                 )
OF THE CURRENCY                           )
                                          )
                     Defendant.           )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Williams & Connolly LLP, brings this action against the defendant, the

Office of the Comptroller of the Currency ("Comptroller"), under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552 (2012).  Complaint for Injunctive Relief ("Compl.") ¶ 1.

Currently before the Court are the parties' cross motions for summary judgment.  After carefully

considering the parties' submissions,[1] the Court concludes for the reasons stated below that it

will grant the defendant's motion and deny the plaintiff's motion.

---

[1] In addition to the filings already referenced, the Court considered the following submissions and their supporting exhibits in resolving the parties' motions:  (1) the Defendant's Motion for Summary Judgment ("Def.'s Mot."); (2) the Plaintiff's Motion for Summary Judgment and Request for Hearing ("Pl.'s Mot."); (3) the Memorandum of Points and Authorities in Support of Motion for Summary Judgment of the Office of the Comptroller of the Currency ("Def.'s Mem."); (4) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (5) the Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("Pl.'s Mem."); (6) the Defendant's Opposition to Plaintiff Williams & Connolly's Motion for Summary Judgment and Points and Authorities in Further Support of Motion for Summary Judgment of the Office of the Comptroller of the Currency ("Def.'s Opp'n"); (7) the Plaintiff's Reply Memorandum in Support of Its Motion for Summary Judgment and in Further Support of Its Opposition to Defendant's Cross Motion for Summary Judgment ("Pl.'s Reply"); (8) the Defendant's Reply Brief in Opposition to Plaintiff Williams & Connolly's Motion for Summary Judgment and in Further Support of Motion for Summary Judgment of the

(continued . . .)

## I. BACKGROUND[2]

The current dispute began with the submission of the plaintiff's June 2012 FOIA request to the Comptroller.  Def.'s Mem. at 5.  The Comptroller is an agency and an independent bureau of the United States Department of Treasury and "is charged with assuring the safety and soundness of, and compliance with laws and regulations, fair access to financial services, and fair treatment of customers by, the [financial] institutions . . . subject to its jurisdiction."  12 U.S.C. § 1(a) (2012).  Pursuant to § 1818(b) of Title 12, the Comptroller may order banks to cease and desist "an unsafe or unsound practice" or a violation of law and may order banks to "take affirmative action to correct or remedy any conditions resulting from any violation or practice."

Exercising its enforcement powers, the Comptroller issued Consent Orders in April 2011 against several banks, including Aurora Bank, Federal Savings Bank ("Aurora"), requiring that the banks "retain an independent consultant acceptable to the [Comptroller] to conduct an independent review" of specific foreclosure practices.[3]  Pl.'s Mem. at 2 (internal quotation marks

---

( . . . continued)

Office of the Comptroller of the Currency ("Def.'s Reply"); (9) the Defendant's Statement of Material Facts Not in Dispute ("Def.'s Facts"); (10) the Plaintiff's Statement of Material Facts as to Which It Contends There Is No Dispute ("Pl.'s Facts"); (11) the Defendant's Reply to Plaintiff's Statement of Material Facts as to Which It Contends There Is No Dispute ("Def.'s Fact Resp."); and (12) the Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ("Pl.'s Fact Resp.").

[2] The following facts are undisputed unless otherwise noted.

[3] These orders were actually issued by the Office of Thrift Supervision in April 2011.  See Def.'s Mem. at 4; Pl.'s Mem. at 2.  However, the Comptroller assumed its financial institution regulatory responsibilities from the Office of Thrift Supervision on July 21, 2011.  See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 312, 124 Stat. 1376, 1521–23 (2010) (codified at 12 U.S.C. § 5412); see also id. § 316(b) (codified at 12 U.S.C. § 5414) (continuing in effect all orders of the Office of Thrift Supervision and conferring enforcement

(continued . . .)

omitted); <u>see</u> Def.'s Mem. at 4–5.  In compliance with these Consent Orders, Aurora hired the

plaintiff's clients, Allonhill, LLC ("Allonhill"), to review its foreclosure practices.  Def.'s Mem.

at 5; Pl.'s Mem. at 2.  However, before the foreclosure review process was completed,

Allonhill's services were terminated "at the direction of the [Comptroller]" because of an alleged

"conflict presented by [its] previous work and the independence requirements of the

[Comptroller]."  Def.'s Mem. at 5; Pl.'s Mem. at 3.

Through its July 2012 FOIA request, the plaintiff, on behalf of Allonhill, sought

generalized information from the Comptroller relating to its third-party contractor independence

requirements.  Specifically, the plaintiff requested:

1. All documents and/or records relating to the [Comptroller's] definition of
   independence, including:

   a. Any documents and/or records relating to the independence requirements
      for independent consultants, prescribed by the [Comptroller];

   b. Any documents and/or records relating to the [Comptroller's] standards of
      independence within the meaning of the scope of the consent order
      foreclosure review pursuant to the April 13, 2011 Consent Orders entered
      into between 14 mortgage servicers and the [Comptroller] . . . ("Consent
      Order Foreclosure Review"); and

   c. Any documents and/or records relating to determining whether any
      particular independent consultant participating in the Consent Order
      Foreclosure Review was or was not independent within the meaning of the
      scope of the Consent Order Foreclosure Review.

---

( . . . continued)
power of the orders to the Comptroller).  Because differentiating between the agencies would be irrelevant to this
opinion, any references to the "Office of Thrift Supervision" will be identified as the Comptroller.

Def.'s Facts ¶ 1; see Pl.'s Fact Resp. ¶ 1.[4]  Approximately two months later, the defendant

denied the FOIA request in full by invoking 5 U.S.C. § 552(b)(8) ("Exemption 8") of the FOIA.

Pl.'s Facts ¶ 10; see Def.'s Fact Resp. ¶¶ 10.

      The plaintiff administratively appealed this decision by letter dated September 21, 2012,

Compl. at 3, ¶ 4, and in December 2012, the Comptroller issued a final decision letter, asserting

that most of the responsive information was properly withheld under 5 U.S.C. § 552(b)(5)

("Exemption 5") because the documents pertained to internal materials reflecting the

Comptroller's deliberative process, privileged attorney work-product, and attorney-client

privilege material, or was properly withheld pursuant to Exemption 8 because the documents are

comprised of information relating to the examination, operation, or condition reports of the

banks.  See Pl.'s Facts ¶¶ 11–12; Def.'s Fact Resp. ¶¶ 11–12; Def.'s Facts ¶ 8; Pl.'s Fact Resp. ¶

8; see also 5 U.S.C. § 552(b)(5), (8).  Because the information sought by the plaintiff pertained to

the "enforcement actions carried out by the [Comptroller]," Def.'s Mem. at 7, the Comptroller

concluded that they "fall into the category of documents related to the [Comptroller's]

examination of banks [and] are therefore exempt from FOIA's disclosure requirements pursuant

to FOIA Exemption 8," id. at 2; see also 5 U.S.C. § 552(b)(8).  However, in its response the

Comptroller did disclose thirteen pages of documents, Pl.'s Facts ¶ 12; see Def.'s Fact Resp. ¶

12, eight of which were already publicly available, Pl.'s Facts ¶ 12; Def.'s Facts ¶ 9.  Two of the

other five pages were partially redacted, which the Comptroller justified on the grounds that an

exemption applied to the redactions or that the information was nonresponsive.  Pl.'s Facts ¶ 12;

---

[4] Although this letter contained additional requests, the "[p]laintiff seeks relief in this action only as to the categories identified above."  Compl. at 3 n.2.

Def.'s Fact Resp. ¶ 12.  In response to this letter, the plaintiff filed this lawsuit on March 27,

2013, requesting a hearing and seeking an order requiring the defendant to file a Vaughn index

and to disclose all documents responsive to the plaintiff's FOIA request.[5]  See Compl. at 4; see

also Pl.'s Facts ¶ 13; Def.'s Fact Resp. ¶ 13.

In lieu of a Vaughn index the Comptroller provided the plaintiff with two sworn

declarations by Monica A. Freas on June 3, 2013 ("Initial Freas Declaration") and June 25, 2013

("Supplemental Freas Declaration"), both with accompanying appendices, which collectively

summarized the agency's search efforts and explained the nature of the withheld documents and

the basis for withholding those documents. Pl.'s Facts ¶¶ 14, 16; Def.'s Facts Resp. ¶¶ 15, 16,

see generally Def.'s Mem., Exhibit ("Ex.") 3 (Declaration by Monica A. Freas in Support of

Motion by the Office of the Comptroller of the Currency for Summary Judgment ("Freas Initial

Decl.")) (attaching "Appendix A" dated June 3, 2013 ("Freas Alt. Index")); Def.'s Mem., Ex. 4

(Supplemental Declaration by Monica A. Freas in Support of Motion by the Office of the

Comptroller of the Currency for Summary Judgment ("Freas Supp. Decl.")) (attaching "Revised

Appendix A" dated June 25, 2013 ("Freas Supp. Alt. Index")).  The Initial Freas Declaration

included Appendix A ("Freas Alternative Index") which invoked Exemptions 5 and 8 as the

[5] Vaughn indices are a mainstay of FOIA proceedings at the district court level in this Circuit.  In Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), this Circuit "recognized the burden placed upon the district court when the government fails to establish with sufficient specificity the basis of claimed exemption from FOIA disclosure of specific documents.  To alleviate that burden, [the Circuit] established the requirement for a Vaughn index so that a district judge could examine and rule on each element of the itemized list."  Summers v. DOJ, 140 F.3d 1077, 1080–81 (D.C. Cir. 1998) (internal citation omitted).  The Circuit subsequently elaborated that although it "ha[s] never required repetitive, detailed explanations for each piece of withheld information," Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (citation omitted), "[t]he Vaughn index 'must adequately describe each withheld document or deletion from a released document,' and 'must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant,'" Summers, 140 F.3d at 1080 (citation omitted).

justification for the Comptroller's nondisclosure of the requested documents.  Pl.'s Facts ¶ 14;

Def.'s Facts Resp. ¶ 14; see generally Def.'s Mem., Ex. 3 (Freas Initial Decl. and accompanying

Freas Alt. Index).  The Comptroller subsequently updated its submission on June 25, 2013,

providing the plaintiff with the Supplemental Freas Declaration and accompanying Revised

Appendix ("Freas Supplemental Alternative Index"). [6]  Pl.'s Facts ¶ 16; Def.'s Facts Resp. ¶ 16;

see also Def.'s Mem., Ex. 4 (Freas Supp. Decl. and accompanying Freas Supp. Alt. Index).  The

Comptroller's Alternative Index invoked Exemption 5 and 8, and added an additional exemption,

5 U.S.C. § 552(b)(4) ("Exemption 4"), as justification for the Comptroller's nondisclosures.  See

Pl.'s Mem. at 15.  See generally Def.'s Mem., Ex. 4 (Comptroller's Alternative Index).

    The parties have now filed cross motions for summary judgment.

## II.  STANDARD OF REVIEW

    A court reviews an agency's response to a FOIA request de novo, 5 U.S.C. §

552(a)(4)(B), and "FOIA cases typically and appropriately are decided on motions for summary

judgment," ViroPharma Inc. v. Dep't of Health & Human Servs., 839 F. Supp. 2d 184, 189

(D.D.C. 2012).  Courts will grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of

law.  See Fed. R. Civ. P. 56(a).  More specifically, in a FOIA action to compel production of

---

[6] The plaintiff generally refers to the Freas Supplemental Alternative Index as the "Vaughn index."  See, e.g., Pl.'s Mot. at 6.  Despite the plaintiff's label, the Court refers to the Freas Supplemental Alternative Index in conjunction with both the Initial and Supplemental Freas Declarations collectively as the "Comptroller's Alternative Index."  See generally Def.'s Mem., Ex. 3 (Freas Initial Decl.); Def.'s Mem., Ex. 4 (Freas Supp. Decl.) (attaching  Freas Supp. Alt. Index).  For ease of reference, the Court will use the citation, Def.'s Mem., Ex. 4 (Comptroller's Alternative Index), when jointly referencing the Freas Initial Declaration, the Freas Supplemental Declaration, and the Freas Supplemental Alternative Index.

agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir.2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir.1978)).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. DOJ, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting DOJ v. Tax Analysts, 492 U.S. 136, 142 (1989)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see Beltranena v. Clinton, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011).

In determining whether the defendant agency has met its burden in support of non-production, "the underlying facts are viewed in the light most favorable to the [FOIA] requester." Weisberg v. DOJ, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  Further, consistent with congressional intent tilting the scales in favor of full disclosure, courts impose a substantial burden on an

agency seeking to avoid disclosure based on the FOIA exemptions.  Morley v. CIA, 508 F.3d

1108, 1114 (D.C. Cir. 2007).  Consequently, "exemptions from disclosure must be narrowly

construed, and conclusory and generalized allegations of exemptions are unacceptable."  Id. at

1114–15 (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610

F.2d 824, 830 (D.C. Cir. 1979)) (internal quotation marks and citation omitted).  Nonetheless,

"[w]hen disclosure touches upon certain areas defined in the exemptions, . . . the [FOIA]

recognizes limitations that compete with the general interest in disclosure, and that, in

appropriate cases, can overcome it."  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157,

172 (2004).

### III. LEGAL ANALYSIS

The FOIA requires government agencies to disclose records upon request unless the

records fall within one of the nine enumerated exemptions.  Milner v. Dep't of the Navy, 131 S.

Ct. 1259, 1261–62 (2011); see generally 5 U.S.C. § 552.  The Comptroller's Alternative Index

invokes Exemptions 4, 5, and 8 as applicable to all but one of the documents at issue,[7] whose

withholding is based only on Exemption 4 and 8.  See generally Def.'s Mem., Ex. 4

(Comptroller's Alternative Index).  As a threshold matter, the Court notes that because the

Comptroller asserts that all of the relevant documents fall within the ambit of Exemption 8, and

since for the reasons discussed below, the Court finds that the Comptroller properly withheld the

---

[7] The only exception to the applicability of all three Exemptions is File No. 17.  See Def.'s Mem., Ex. 4 (Comptroller's Alternative Index) at 13 (omitting Exemption 5 as justification for nondisclosure of File No. 17, which comprised "[l]etters dated May 11, 2012[,] from [Comptroller] supervisory employees to relevant banks and independent consultants directing the termination of an independent consultant due to a determination of insufficient independence" and "detail[ing] the nature of a past engagement disclosed to the [Comptroller] by [the] consultant that led to [the] consultant's termination from [the independent foreclosure review]").

requested records pursuant to Exemption 8, it does not address Exemption 4 and 5.  See Coleman v. Lappin, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) ("If the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information." (citing Simon v. DOJ, 980 F.2d 782, 785 (D.C. Cir. 1992))).

### A.  FOIA Exemption 8

FOIA Exemption 8 protects information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C. § 552(b)(8).  The parties dispute not only whether the documents at issue fall within the scope of Exemption 8, but also whether withholding the documents produces an unreasonable result.  Because the Comptroller is only entitled to withhold the documents if they fall within the statutory protections of the exemption, the Court begins its analysis with that assessment.  See id.

### 1.  Applicability of Exemption 8:  The "Related to" Requirement

The parties dispute whether Exemption 8 applies to the requested documents, specifically, whether the requested documents are "related to" a bank examination for purposes of Exemption 8.  The plaintiff argues that the plain language of Exemption 8 does not shield the requested documents from disclosure because they "do not relate to a bank examination but instead to a third-party driven independent foreclosure review."  Pl.'s Opp'n at 1–2; see Pl.'s Mem. at 7–9. The Comptroller, on the other hand, argues:

> The withheld records at issue in the instant action contain the communications between [Comptroller] attorneys and supervisory employees and the Banks, their proposed independent consultants, and proposed independent counsel as well as internal [Comptroller] and inter-agency discussion of the vetting of independent

consultants and independent counsel . . . 'relate to' bank examinations and are thus within the scope of Exemption 8.

Def.'s Mem. at 15.

Although generally "exemptions to the FOIA must be narrowly construed," <u>Consumers Union of U.S., Inc. v. Heimann</u>, 589 F.2d 531, 533 (D.C. Cir. 1978), this Circuit has repeatedly recognized the broad scope Congress accorded Exemption 8, <u>see, e.g.</u>, <u>Gregory v. FDIC</u>, 631 F.2d 896, 898 (D.C. Cir. 1980) (per curiam) (indicating that "Congress looked to the nature and source of the material and determined to provide absolute protection regardless of the circumstances underlying the regulatory agency's receipt or preparation of examination, operating or condition reports," leaving "no room for a narrower interpretation"); <u>Heimann</u>, 589 F.2d at 533 ("Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, [and] it is not our function, even in the FOIA context, to subvert that effort."); <u>see also</u> <u>McKinley v. FDIC</u>, 744 F. Supp. 2d 128, 143 (D.D.C. 2010) ("Although generally FOIA exemptions are to be narrowly construed, it is well-established that Exemption 8's scope is particularly broad." (internal quotation marks and citations omitted)), <u>aff'd sub nom</u>, <u>McKinley v. Bd. of Governors of the Fed. Reserve Sys.</u>, 647 F.3d 331 (D.C. Cir. 2011). Exemption 8's "'related to' language casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report[].'" <u>Pub. Investors Arbitration Bar Ass'n v. SEC</u>, 930 F. Supp. 2d 55, 62 (D.D.C. 2013) (alteration in original) (quoting 5 U.S.C. § 552(b)(8)).

Recognizing the broad applicability of Exemption 8, this Circuit has held that "examination reports need not pertain to an institution that is regulated or supervised by the withholding agency." <u>Pub. Citizen v. Farm Credit Admin.</u>, 938 F.2d 290, 294 (D.C. Cir. 1991)

10

(per curiam).  Accordingly, "agencies that do not directly regulate or supervise a particular

financial institution may still withhold information about that institution under Exemption 8, so

long as the withholding agency is one that is 'responsible for the regulation or supervision of

financial institutions' more generally."  Public Investors, 930 F. Supp. 2d at 62 (quoting 5 U.S.C.

§ 552(b)(8)).  Furthermore, other members of this Court have held that "Exemption 8 extends to

any documents received by a financial regulatory agency in the course of exercising its

'regulatory responsibilities in relation to the financial institutions whose information has been

withheld.'"  Id. (quoting McKinley, 744 F. Supp. 2d at 144) (emphasis added).

    Although the plaintiff argues that the issuance of the Consent Order terminated the bank

examination and "created a new, separate process . . . driven by independent consultants," Pl.'s

Mem. at 7, the records generated as a result of the Consent Order certainly occurred "in the

course of" the Comptroller "exercising its regulatory responsibilities."[8]  See Public Investors,

930 F. Supp. 2d at 62 (internal quotation marks omitted); see also Atkinson v. FDIC, No. 79-

1113, 1980 WL 355660, at *1 (D.D.C. Feb. 13, 1980) (finding that because "[t]he documents in

question, . . . represent the foundation of the examination process, the findings of such an

examination, or its follow-up" were "exempt as 'related to' examination reports" (emphasis

added)).  Here, the requested documents constitute "communications between [the

Comptroller's] attorneys and supervisory employees and the Banks, their proposed independent

consultants, and proposed independent counsel as well as internal [Comptroller] and inter-agency

---

[8] There is no dispute that the Consent Orders was issued "in the course of" the Comptroller's regulatory functions. See Public Investors, 930 F. Supp. 2d at 62; see also 12 U.S.C. § 1818(b) (authorizing the Comptroller to issue cease and desist orders or orders requiring banks to "take affirmative action to correct or remedy any conditions resulting from any violation or practice").

discussion of the vetting of independent consultants and independent counsel," Def.'s Mem. at 15, and therefore, the Comptroller's follow-up communications "relate to" a bank examination.

As such, under the plain language of Exemption 8, and contrary to the plaintiff's position, the documents withheld by the Comptroller fall within the purview of Exemption 8–regardless of whether the documents were generated as part of a third-party driven independent foreclosure review–so long as they were prepared in furtherance of the Comptroller's "responsib[ility] for the regulation or supervision of financial institutions," reducing the pertinent question in this case to whether the Comptroller regulates or supervises financial institutions.  See 5 U.S.C. § 552(b)(8).  And because the Comptroller is explicitly charged with regulating financial institutions, based on the plain language of the statute, Exemption 8 applies to the requested documents.  See 12 U.S.C. §§ 1(a), 481, 1820(d) (charging the Comptroller with "assuring the safety and soundness of, and compliance with laws and regulations, fair access to financial services, and fair treatment of customers by, the institutions," and with administering examinations of national banks).

**2.  Exemption 8's Purposes**

The Circuit has articulated two purposes that underlie Exemption 8: (1) "to ensure the security of financial institutions" and (2) "to safeguard the relationship between the banks and their supervising agencies," Heimann, 589 F.2d at 534, and the parties disagree as to whether nondisclosure of the requested documents serves to safeguard the relationship between banks and their supervising agencies.  The plaintiff argues that in light of the purposes articulated by the Circuit, "[t]he [Comptroller's] interpretation [of Exemption 8] is unreasonable in this case

because it is unrelated to" Exemption 8's underlying purposes, Pl.'s Mot. at 9–10, and has therefore "lead to an unreasonable result,"[9] Pl.'s Opp'n at 2–3.

The plaintiff argues that disclosure would not "shake the confidence in financial institutions because the information sought is about independent consultants, not banks," Pl.'s Opp'n at 3; see Pl.'s Mot. at 10, and therefore, since independent consultants are not regulated by the Comptroller, "[p]roduction of the requested documents would in no way impair the [Comptroller's] claimed need for candor from its regulated financial institutions," Pl.'s Opp'n at 3. The Comptroller counters that withholding the records ensures that banks are "frank, forthright, and open" with the Comptroller, which is necessary "to successfully fulfill its mission to promote the safety and soundness of the national banking system and protect consumers." Def.'s Mot. at 16. Moreover, the Comptroller argues that "Exemption 8 . . . is not limited in the way [the p]laintiff contends," Def.'s Opp'n at 9, because "[t]he exemption does not contain a test of direct relatedness to a bank or bank examination; rather it requires relatedness, which . . . is interpreted broadly," id.

---

[9] The plaintiff asserts that "the [Comptroller's] refus[al] to disclose the purported standards, if any, it used to qualify the consultants that were charged with determining whether the public was harmed by wrongful foreclosure practices," Pl.'s Opp'n at 4, has produced an unreasonable result because "publicly disclosing the standards . . . will enable consultants to provide relevant information at the outset of similar engagements in the future," id. However, to the extent the plaintiff's argument has merit, here the Comptroller represents that it "has granted [the p]laintiff's request for records 'relating to the [Comptroller's] standards of independence within the meaning of the scope of the consent order foreclosure review pursuant to the April 13, 2011 Consent Orders,'" Def.'s Reply at 6, see Def.'s Reply, Ex. 1 (Freas Second Supp. Decl.)) ¶¶ 7–9 (listing all of the documents related to the independence standards used during the assessments and attesting that the Comptroller is "not aware of any other standards for independence applied in any other independence determinations with respect to consultants and counsel"). Because the agency's representation is entitled to a presumption of good faith, see SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), the Court must therefore accept Ms. Freas's representation that no other standards were applied other than those contained in the disclosed documents, see Def.'s Reply, Ex. 1 (Freas Second Supp. Decl.) ¶¶ 7-9, absent contradictory evidence. The argument is therefore now moot and will not be addressed. See Williams & Connolly v. SEC, 662 F.3d 1240, 1244 (D.C. Cir. 2011) (holding that the release of requested documents to a plaintiff renders its FOIA suit moot "with respect to those documents").

As recently observed by another member of this Court, "it is clear that at least one case from within this Circuit (and arguably more) has applied Exemption 8 to documents other than those involving the finances or financial transactions of the institutions being examined." Public Investors, 930 F. Supp. 2d at 66; see, e.g., Bloomberg, L.P. v. SEC, 357 F. Supp. 2d 156, 167, 169 (D.D.C. 2004) (upholding the Security and Exchange Commission's ("SEC") invocation of Exemption 8 as the basis for withholding "notes and memoranda" of SEC employees that related to meetings where other financial institutions "report[ed] to the SEC on steps they were taking or considering in connection with issues of concern regarding the regulation of securities analysts"). In Public Investors, Exemption 8 was successfully invoked as to documents relating to an agency's process of selecting private arbitrators, because "the SEC aver[red] that all of the potentially responsive documents were obtained pursuant to the SEC's ongoing and continuous oversight responsibilities, which is sufficient to bring them within the ambit of Exemption 8." Public Investors, 930 F. Supp. 2d at 59, 70, 72 (internal quotation marks and citation omitted). The Court's conclusion in Public Investors was based on its reasoning that the records pertained to "institutional problems related to fairness and transparency, such as conflicts of interest, that likely bear indirectly on financial matters and might require further regulation." Id. at 66–67(emphasis in original).

The plaintiff attempts to distinguish Public Investors from this case by arguing that the records at issue in Public Investors related to the SEC's supervision of an agency clearly regulated by the SEC, and involved documents the SEC received "in the course of exercising its regulatory responsibilities in relation to the financial institutions whose information has been withheld," while the documents requested in this case "relat[e] to the [Comptroller's] standards

for independent consultants and the [Comptroller's] determinations with respect to the independent consultants—entities that are not financial institutions and that are not regulated by the [Comptroller]."  Pl.'s Opp'n at 3 n.1 (alterations in original)(internal quotation marks omitted).  The plaintiff's attempt to distinguish this case from Public Investors is unpersuasive because, as in Public Investors, where the records were related to the regulated agency's selection of non-regulated arbitrators, 930 F. Supp. 2d at 59, this case similarly involves records concerning a non-regulated entity — independent consultants.

Although the plaintiff successfully distinguishes the facts of Bloomberg because the records there concerned the "SEC's discussions with the regulated entities themselves regarding their administrative function," Pl.'s Opp'n at 3 n.1, it fails to recognize that the underlying principles are analogous.  In Bloomberg, the Court held that Exemption 8's "purposes would undeniably be served by exempting documents summarizing a meeting at which financial institutions were encouraged to engage in a candid assessment of industry problems and discussions regarding potential self-regulatory responses," 357 F. Supp. 2d at 170.  Similarly, as the Comptroller stated through a sworn declaration here:

> [T]he [Comptroller], both in its supervisory and enforcement functions, depends on receiving the cooperation of and forthright, frank, and open communication with its regulated entities in order to successfully fulfill our mission to promote the safety and soundness of the national banking system and protect consumers. The ability to engage in the examination and supervisory process and share and discuss examination findings in both the supervisory and enforcement context without making communications and related documents public is crucial to the success of the [Comptroller's] mission of ensuring a safe and sound national banking system.

Def.'s Mem., Ex. 3 (Freas Initial Decl.) ¶ 26 (emphasis added).

The Court is not persuaded by the plaintiff's assertion that Exemption 8 does not protect the requested documents from disclosure because "the information sought is about independent consultants, not banks," and therefore a literal application of Exemption 8 produces an unreasonable result.  See Pl.'s Opp'n at 3.  Rather, the Court is persuaded by the defendant's position that withholding the requested documents furthers one of the exemption's underlying purposes—it encourages banks to be candid and transparent with the Comptroller regarding the independent third-party contractors each bank was required to hire pursuant to the Consent Order issued by the Comptroller to review the bank's foreclosure practices.  Def.'s Mem., Ex. 3 (Freas Initial Decl.) ¶¶ 5–6, 26.  The Comptroller therefore properly invoked Exemption 8 as grounds for withholding the requested documents.[10]

## B.  The Plaintiff's <u>Vaughn</u> Index Challenge

In addition to challenging the Comptroller's invocation of Exemption 8, the plaintiff also challenges the sufficiency of the Comptroller's Alternative Index and seeks an order requiring the Comptroller to produce a "proper" index.  See Pl.'s Opp'n at 10–12.  In lieu of a <u>Vaughn</u> index, the Comptroller submitted two sworn declarations that summarize the Agency's search efforts and explain both the nature of the withheld documents and the factual basis for withholding those documents under Exemption 8.   See generally Def.'s Mem., Ex. 3 (Freas Initial Decl. and accompanying Alt. Index); Def.'s Mem., Ex. 4 (Freas Supp. Decl. and accompanying Comptroller's Alternative Index).  The plaintiff argues these submissions are

---

[10] The plaintiff cautions that such an expansive reading of Exemption 8 would "render Exemption 8 limitless."  Pl's Opp'n at 2; see Pl.'s Mem. at 7–9.  However, as the Court noted in <u>Public Investors</u>, "if that is the result, it is the only result that comports with the current text of the FOIA and the clear intent of Congress."  <u>Public Investors</u>, 930 F. Supp. 2d at 70.

insufficient because they are "barebones," "generic," and "boilerplate," Pl.'s Mem. at 6–7,

causing the plaintiff to "fly[] blind[] well into a dispositive briefing," Pl.'s Opp'n at 10–12.  The

Court does not agree.

Submission of a <u>Vaughn</u> index is not mandatory.  <u>See</u> <u>Public Investors</u>, 930 F. Supp. 2d

at 70–72 (finding that a "sworn declaration that summarizes the agency's search efforts and

explains both the nature of the withheld documents and the factual basis for withholding those

documents categorically under Exemption 8" is an acceptable substitution for a <u>Vaughn</u> Index).

In cases where a sworn declaration is sufficient to identify the applicability of an exemption,

such as Exemption 8, that protects an entire category of withheld information, there is no need

for additional clarification.  <u>Church of Scientology of Cal. v. IRS</u>, 792 F.2d 146, 152 (D.C. Cir.

1986).  Rather, an agency's submissions suffice "so long as they give the reviewing court a

reasonable basis to evaluate the claim of privilege."  <u>Public Investors</u>, 930 F. Supp. 2d at 71

(internal quotation marks and citation omitted).

Because Exemption 8 categorically applies to the requested records in this case, it would

be futile to order the Comptroller to do more than what it has already done.  The Court reaches

this conclusion because upon examining the Comptroller's Supplemental Index submissions in

conjunction with the sworn declarations, the Court finds that there is a reasonable basis to

evaluate the claimed privileges.  Indeed, the Comptroller's Alternative Index provides a

description of what the documents are, the number of pages, the claimed exemptions and a brief

rationale for each withheld category of files.  Thus, the plaintiff's request that the Court order the

Comptroller to produce a <u>Vaughn</u> index is denied.

## IV. CONCLUSION

Because the Court concludes that the Comptroller properly withheld the requested documents under Exemption 8, it need not address the parties' arguments with respect to Exemptions 4 and 5.  Moreover, because the Court is able to assess the propriety of the Comptroller's assertion of FOIA Exemption 8 as grounds for withholding the requested documents based on what has already been submitted, the Comptroller will not be required to provide a supplemental <u>Vaughn</u> index as demanded by the plaintiff.  Accordingly, for the foregoing reasons, the Court grants the Comptroller's motion for summary judgment and denies the plaintiff's motion for summary judgment and also its request for a hearing in the matter.

**SO ORDERED** this 30 day of April, 2014.[11]

REGGIE B. WALTON
United States District Judge

---

[11] A final order will be issued contemporaneously with this memorandum opinion.